**ABERNATHY et al. v. FIDELITY NAT. BANK & TRUST CO. et al. HAGERMAN v. SAME. SWOPE et al. v. SAME.**

(District Court, W. D. Missouri, W. D. June 28, 1921.)

Nos. 163, 207, 215.

1. **Municipal corporations ⊜—484(2)—Decree in proceeding for local improvement held not res judicata as to reasonableness of basis of taxation.**

    A decree of the circuit court in a proceeding under Kansas City Charter, art. 8, § 28, to establish a taxing district for a local improvement, determining the validity of an ordinance passed by the city, was not res judicata, so as to prevent landowners from raising the question as to the reasonableness of the basis of taxation.

2. **Municipal corporations ⊜—450(1), 463—Benefit district and assessments held arbitrary and unreasonable.**

    Benefit district, created to meet expense of local improvement, consisting of an approach to a park, and assessments on property within such district, *held* arbitrary and unreasonable.

In Equity. Bills by Walter L. Abernathy and another, by B. Haywood Hagerman, and by Felix H. Swope and others, respectively, against the Fidelity National Bank & Trust Company and others. Decrees for complainants.

Warner, Dean, Langworthy, Thomson & Williams, of Kansas City, Mo., for complainants Abernathy.

Marley & Reed, of Kansas City, Mo., for complainant Hagerman.

Scarritt, Jones, Seddon & North, of Kansas City, Mo., for complainants Felix H. Swope and others.

Justin D. Bowersock, of Kansas City, Mo., for defendant Fidelity Nat. Bank.

Miller, Camack & Winger, of Kansas City, Mo., for defendants Standard Inv. Company, Delap, and Meriwether.

Clarence S. Palmer, of Kansas City, Mo., for defendant Kansas City, Mo.

VAN VALKENBURGH, District Judge. These cases involve the validity of certain tax bills issued against the property of complainants to pay for the grading of Meyer boulevard, from the Paseo east to Swope Park. These bills are based upon proceedings instituted under

⊜—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
274 F.—51

section 28 of article 8 of the charter of Kansas City, Mo. This section provides that where, in the grading of a street, there is an unusual amount of filling, or cutting or grading away of earth or rock, so that the expense imposes too great a burden on land situated in the benefit district, consisting of property abutting upon the street to be improved, as provided in section 3 of article 8, then the cost may be assessed against the property located within a larger benefit district to be fixed by the city council.

Section 28 further provides for the enactment of an ordinance authorizing the improvement, and that the city shall file a proceeding in the circuit court of Jackson county, Mo., in the name of the city, against the respective owners of land chargeable, and that the prayer of the petition shall be that the court find and determine the validity of the ordinance, and the question of whether or not the respective tracts of land within the benefit district shall be charged with the lien of the work. Service of process shall be governed by the provisions of section 11 of article 13 of the charter, which provide for service by publication. After such court proceedings have been disposed of, it is provided that the city may then enter into a contract for the work contemplated, and that after the work has been completed the estimate of the cost thereof, and the apportionment of the same against the various lots, tracts, and parcels of land within the benefit district, shall be made by the board of public works according to the assessed value thereof, exclusive of improvements, with the assistance of the city assessor, who shall, on demand of the board of public works, cause an assessment to be made of the value of the lands to be charged with the cost of such grading, and shall deliver such assessment to the board of public works, who shall apportion the cost according to the value thereof fixed by the city assessor.

Meyer boulevard, from the Paseo to Swope Park, is a broad highway, being 220 feet wide at its narrowest point, and 500 feet wide as it approaches the park. Provision is made for parkways between the driveways, so that of the total area of the boulevard only about 11 acres are taken up by the driveways, and the remaining 20 acres consist of grass parkways. The grading includes the entire area. The benefit district extends approximately one mile in length, and lies between Sixty-Third and Sixty-Seventh streets, a width of approximately four blocks, which area includes the land taken for the boulevard itself. The grading cost, for which the tax bills were issued, was substantially $97,000. The total assessed valuation of the benefit district, specially made for the purposes of this improvement, was $378,955. The rate of assessment to total assessed value is thus found to be approximately 26 per cent.

It appears from the evidence that the city assessor, in assessing the value of the property in the benefit district, assessed all of the property at substantially the same value per acre, and that all the property was assessed for this special purpose at a value several times that at which it is and was assessed for general tax purposes. This will appear concretely from a consideration of the tracts belonging to complainants.

Tract No. 2, belonging to Gertrude M. Brown, was assessed for general tax purposes in the year 1915 at $4,750, for 1916 at $4,750, and for 1917 at $5,000; in 1916, for the purposes of this grading, at $25,960. The tax bill against this property for this grading was $6,693.40. Tract No. 3, belonging to Felix H. Swope, was assessed for general tax purposes in the year 1915 at $6,240, for 1916 at $6,240, and for 1917 at $6,240; in 1916, for Meyer boulevard, at $25,440. The tax bill against this property for this grading was $6,558. Tract No. 8, belonging to Felix H. Swope, was assessed for general tax purposes in the year 1915 at $4,470, for 1916 at $4,470, and for 1917 at $4,320; in 1916, for Meyer boulevard, at $29,250. The tax bill against this property for this grading was $7,540.20. Tract No. 11, belonging to B. Haywood Hagerman, was assessed for general tax purposes in the year 1915 at $12,480, for 1916 at $12,480, and for 1917 at $10,350; in 1916, for Meyer boulevard, at $48,535. The tax bill against this property for this grading was $12,511.60. Tract No. 14, belonging to Carrie S. Abernathy, was assessed for general tax purposes in the year 1915 at $6,400, for 1916 at $6,400, and for 1917 at $6,400; in 1916, for Meyer boulevard, at $24,920. The tax bill against this property for this grading was $6,424. Tract No. 15 belonging to Carrie S. Abernathy, was assessed for general tax purposes in the year 1915 at $6,000, for 1916 at $6,000, and for 1917 at $6,000; in 1916, for Meyer boulevard, at $24,570. The tax bill against this property for this grading was $6,333.80.

It will thus appear that for the year 1916 these tracts, in the aggregate, were assessed for general tax purposes at a value of $40,340; that in the following year, after the Meyer boulevard improvement, which is claimed to have added value in the way of benefits, had become a fixed fact, the same assessor assessed this same ground for general tax purposes at an aggregate of $38,310, more than $2,000 less than the previous year; that in 1916 these same tracts, in the aggregate, for the purposes of this grading, were assessed at $188,680, a little less than five times the value at which they were assessed during the same year for general tax purposes. It further appears that the tax bills issued against these tracts, for this improvement, aggregate $46,061, nearly $6,000 more than the assessed valuation for general tax purposes in 1916, and nearly $8,000 more than they were assessed for the same purposes in 1917. It further appears that these tracts, practically unimproved suburban property, were assessed to pay almost one-half of this entire improvement, at an average rate of over $350 an acre.

Meyer boulevard, with its heroic proportions, was conceived for the purpose of establishing an inspiring approach to Swope Park, the great playground of Kansas City, and incidentally as a thoroughfare into which, directly and indirectly, the boulevard system of Kansas City might discharge the throngs of pleasure seekers and pleasure drivers who visit that park. It is altogether an appropriate and desirable enterprise for the gratification of the public at large, and its chief

value is to the public at large, and to the city property to which it is tributary, and only very incidentally to the locality through which it passes. Notwithstanding this fact, the board of public works assessed no part of the benefits against the city at large, nor against the property of the city, which would indirectly effect the same purpose, although that seems to have been contemplated by section 28, by the ordinance authorizing the improvement, and by the petition filed in the circuit court. That court, as shown by its order, may well have contemplated, and undoubtedly did contemplate, that a portion of the whole cost would be charged against the city. The board of public works, however, imposed the entire burden upon the private property within the benefit district.

Many points are urged by complainants against the regularity of the proceedings and the validity of the tax bills. It is claimed that the method of apportionment provided for in section 28 of article 8 of the charter is fundamentally so unfair and unjust as to result in the taking of property without due process, in violation of the Fourteenth Amendment to the federal Constitution; that the tax assessed against the property in question exceeds the special benefits received to such an extent as to result in the taking of the property without due process; that this is a general public improvement, and not a local one; that the benefit district is unreasonable; that the circuit court proceeding is an essential step in the grading procedure, and was not followed with sufficient strictness, in that a suit was not brought in the name of Kansas City, and the parties charged were not named; that that proceeding was, in effect, a moot one, without recognition in the judicial procedure of the state, binds no one, and that the decree entered cannot be urged as res adjudicata. They also claim that the benefits were not apportioned equitably, and with a due regard for actual benefits.

Defendants reply that the grading is of such a nature that its cost may lawfully be charged against a local benefit district; that the benefit district is a reasonable one; that distribution of cost in proportion to assessed valuation is a proper method of apportionment; that the amount of benefit to the particular tracts in question cannot be inquired into in this proceeding; that the suit in the circuit court is such a proceeding as comports with due process of law and affords sufficient opportunity to be heard on the questions involved; that section 28 was duly complied with; that all questions raised, or which could have been raised, in the circuit court proceeding, are now res adjudicata; and, chiefly, that, if a legislative body charges the cost of an improvement upon lands which it deems to have benefited therefrom, the courts must accept the legislative determination.

Both parties, in exhaustive and learned briefs, have cited abundant authority to sustain their several contentions and each of them, regard being had for the special facts, circumstances, and emergencies which control the cases cited. It will serve no useful purpose, and it is beyond the limit of practical possibility in this memorandum, to analyze, discuss, and distinguish the authorities adduced and the doctrines there announced. I am of opinion that the charter section involved is

susceptible of such arbitrary application as to amount, if such be the course pursued, in view of presumptions generally indulged and of the development of decisions, seeking carefully to preserve and not too greatly to hamper the exercise of municipal sovereignty for the common good, to a burden upon private property almost, if not quite, to the point of confiscation. It may be that the suit as entitled would be held to conform analogously to city condemnation proceedings in general, but it must be confessed that the provisions for notice and hearing approach very closely to the frontier of judicial recognition. The proceeding in the circuit court is a mere adjunct to the legislative action of the council, and the issues made in that suit, if not wholly abstract in their nature, at least fall far short of contemplating a complete adjudication upon all matters with which those whose property is to be taken for public use are vitally concerned. "It may well be doubted," as said by Mr. Justice Brewer in Tregea v. Modesto Irrigation District, 164 U. S. 179, 17 Sup. Ct. 52, 41 L. Ed. 395, "whether the adjudication really binds anybody."

However, I do not feel justified in going so far as to declare the charter section itself to be wholly unconstitutional and void; nor is this necessary. Counsel for defendants concede the settled rule to be that a state Legislature, and, of course, a city council, may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the Fourteenth Amendment, unless its action is palpably arbitrary or a plain abuse. They say:

"This legislative power is, however, not unlimited. It is subject to the limitation that its exercise must not be arbitrary or unreasonable."

It must be admitted that:

It the statute providing for the tax "is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred the law cannot stand against the complaint of one so taxed in fact." Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. 254, 60 L. Ed. 523; Kansas City Southern Ry. Co. et al. v. Road Improvement Dist. No. 6 of Little River County, Ark., 255 U. S. ——, 41 Sup. Ct. 604, 65 L. Ed. —— (Supreme Court of the United States, decided June 6, 1921).

[1] The defense contends, however, that complainants herein cannot raise this question because of the circuit court proceeding. To this I cannot agree. Finally, defendants concede that the fairness of the assessor's valuation remains open to the consideration of whether it was arbitrary and unreasonable. I think this may be properly considered in connection with the action taken in defining the benefit district, and that when these two questions are disposed of it will be unnecessary to consider the other criticisms made and the defenses interposed.

What was done in this case appears clearly from the evidence, as well as from common knowledge of procedure. It was desired to establish this super-boulevard, and it was realized that the expenditure would be entirely too burdensome if charged against the abutting property, as is usual in grading proceedings. Therefore resort was

had to section 28 of article 8, which was intended to relieve in a situation of this sort. But merely adopting the form prescribed by section 28 does not necessarily afford such relief in practice.

Next, as appears from their testimony, the municipal representatives, boards and council, felt themselves more or less circumscribed and limited by physical conditions. They did not feel justified in going beyond Sixty-Third street on the north and Sixty-Seventh street on the south, because of their conception of such physical conditions. They therefore deemed themselves confined to the restricted benefit district established. Now, while we may say that this involved the exercise of judgment and discretion in excluding property which was left out, all of which, in the condemnation proceeding, was deemed to be benefited by the establishment of this boulevard, there was very little exercise of judgment and discretion as to reasonable benefits respecting the territory included. The dominant idea was that the boulevard must be established in any event, and this benefit district was arbitrarily selected to produce the funds. Although the improvement was primarily of benefit to the city at large, assessment against the city or its property was not considered, because of the well-known fact that the city had no funds which could be spared for this purpose.

But the assessed valuation of the property in the benefit district for general tax purposes aggregates no more than the cost of this grading. This would never do, because such an assessment would be obvious confiscation, not of a single isolated lot, but of the entire benefit district. Therefore an arbitrary assessment was made, presumably with the assistance of the same assessor who makes the assessments for general tax purposes, amounting, as we have seen, to nearly five times the normal assessed valuation. Now, while property of this nature is not assessed at full valuation for general purposes, no one will contend that it is assessed at practically only one-fifth of its actual value. Thirty to 40 per cent. on city property would be the lowest acceptable figure. This property, for this improvement, is charged with considerably more than its entire assessed valuation for general tax purposes. It sufficiently appears that these tax bills amount to more than one-third of the actual value, and that the benefit to complainants' property, if any, is negligible. Such assumed benefit is entirely speculative, and bears no reasonable relation, in any view, to the amount of the tax.

It appears that Meyer boulevard lies to the south of these tracts and furnishes no direct thoroughfare to the city, which lies almost entirely to the north and west; besides, ample routes to the city, for all purposes, already exist. Swope Parkway, itself a very broad and commanding boulevard, runs along the eastern boundary, and Sixty-Third street, up to that time a recognized thoroughfare, bounds most of these tracts upon the north.

[2] I find, for the reasons stated, as disclosed by the record, that both the benefit district and the assessment were arbitrary and unreasonable, and that the tax bills unreasonably exceed any possible benefit to this restricted benefit district. The court is not unmindful of the necessity of recognizing liberal power in municipalities to provide

for public improvements, even such as that under consideration, although this is not of the class, under the circumstances disclosed, which is essential to the public health and safety, which sometimes calls for the exercise of more arbitrary and summary municipal power. To uphold this proceeding would be a practical recognition that the power of the city in such matters is unlimited and that its exercise is not open to individual challenge in any case.

In Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, the Supreme Court of the United States said:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

To this may be added the language of the Supreme Court of Missouri in McCormack v. Patchin, 53 Mo. 33, 14 Am. Rep. 440:

"The whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. A law which would attempt to make one person, or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation."

And finally, the language of Judge Agnew in the Washington Avenue Case, 69 Pa. 352, 8 Am. Rep. 255, is pertinent and applicable to the principle here involved:

"In questions of power exercised by agents, it is sometimes the misfortune of communities to be carried, step by step, into the exercise of illegitimate powers without perceiving the progression, until the usurpation becomes so firmly fixed by precedents, it seems to be impossible to recede or to break through them.

This case is cited with approval in Norwood v. Baker, 172 U. S. 285, 19 Sup. Ct. 187, 43 L. Ed. 443. The court is further mindful of the fact that the improvement has been made, the work has been done, the money has been spent, and much of it probably has been advanced upon the faith of the validity of this proceeding; but this is always the case, and we must not lose sight of the fact that one of the arguments made in support of the insistence that complainants in this and similar cases have not been denied due process of law is that all defenses of this nature may be made in a suit upon the tax bills, or in proceedings like those at bar for the protection of those whose lands are taken or taxed for public purposes. In fact, complainants are practically remitted to this remedy.

It follows necessarily, then, that the present status of the parties, who are charged with knowledge of the law and of the power of public officers, can, and should, have no controlling influence upon this decision.

The relief prayed by petitioners will be granted, and decrees to that effect may be prepared and entered.