THORNTON et al. v. ROAD IMP. DIST. NO. 1 OF CLARK COUNTY, ARK., et al.

(Circuit Court of Appeals, Eighth Circuit. June 7, 1923.)

No. 6024.

1. Highways ⊜136—Act adding lands to improvement district and authorizing construction of road held to require assessment of total cost against land so added.

Road Acts Ark. 1919, No. 374, adding lands to existing road improvement district and directing construction of certain road and assessment of benefits under Acts Ark. 1915, No. 338, and providing that such assessments should embrace all property added and should be controlled and governed by the act of 1915, required assessment of entire cost against the land so added to exclusion of lands included in original district and similarly situated with reference to the road.

2. Statutes ⊜162—Special act and general law must both stand, if possible.

Where special act and general law are inconsistent, they must, if possible, stand together, the former as the law of the particular case and the latter as the general law of the land.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Constitutional law ⊜⟹233, 284(1)—Assessment of entire cost of road against lands lying along a part of its distance held arbitrary and excessive and to deny due process and equal protection.**

   Assessment by road district under Road Acts Ark. 1919, No. 374, of entire cost of road 26 miles long against lands lying along the east 11 miles thereof, with no assessment of benefits on lands along the west 15 miles, though similarly situated and benefited, was disproportionate, excessive, and arbitrary, and denied due process of law and the equal protection of the laws, in violation of Const. U. S. Amend. 14, though lands along the west 15 miles had previously been assessed for benefits from construction of other roads.

4. **Constitutional law ⊜⟹284(1)—Due process requires assessment of benefits to be just and fairly proportionate to assessments against others.**

   It was indispensable to taking of property by due process of law by means of assessments of benefits on account of construction of road and taxation based thereon that assessment of benefits should be just and fairly proportionate to assessment of benefits to other property benefited by same improvement.

5. **Constitutional law ⊜⟹284(2)—Ratification of assessment of benefits by Legislature held not to supply due process of law.**

   As assessment by road district of entire cost of road 26 miles long against lands lying along the east 11 miles thereof was disproportionate, arbitrary, and excessive and denied due process of law, Acts Ark. (Sp. Sess.) 1920, No. 358, purporting to cure all irregularities and errors in the assessment, but enacted without notice or opportunity to be heard, did not supply due process of law or relieve the assessment and tax of its grossly disproportionate, arbitrary, and excessive character.

6. **Courts ⊜⟹262(4)—Landowners not precluded by regularity of assessment proceedings from suing to enjoin enforcement of unconstitutional assessment.**

   Where assessment of benefits by road improvement district was grossly disproportionate, arbitrary, and excessive, within Const. U. S. Amend. 14, landowners were not estopped by regularity of proceedings from suing in federal court for equitable relief against enforcement of the assessment, especially where they were nonresidents, the only notice of the proceedings was by publication, and they did not know thereof until their time to appeal had expired.

7. **Constitutional law ⊜⟹233—Assessment which is grossly disproportionate and made pursuant to prescribed basis affording no reasonable presumption of substantial justice denies equal protection of the laws.**

   Assessment of benefits from local improvement and taxation based thereon, when grossly disproportionate between the parties benefited and made pursuant to basis prescribed by law or ordinance of such character that there is no reasonable presumption that substantial justice will be done, but probability that parties will be taxed disproportionately, denies the equal protection of the laws.

8. **Highways ⊜⟹140—Grossly disproportionate and palpably unreasonable assessment cannot stand, though made under statute authorizing fair and just assessment.**

   Though law or ordinance, pursuant to which assessment of benefits and taxation thereunder are made, authorizes or permits fair and just assessment of benefits and levy of taxes, if officers executing and applying it make assessment of benefits and taxation thereon that is oppressively excessive, arbitrary, or confiscatory, or grossly disproportionate or palpably discriminatory, such assessment and taxation cannot stand.

9. **Highways ⊜⟹140—Assessment of benefits held arbitrary and grossly excessive when property not specially benefited.**

   Assessment by road district of entire cost of road 26 miles long against property along the east 11 miles thereof was arbitrary and grossly excessive, where the property assessed received no special benefit from the west 11 miles of the road lying beyond a certain town.

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. **Highways** ⬅140—**Assessment held arbitrary and excessive when property in vicinity of road received no special benefits from construction of different road.**

Assessment of benefits from construction of road against property in immediate vicinity of another parallel road receiving no special benefits from construction of the first road was arbitrary and grossly excessive.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by Charles S. Thornton and others against Road Improvement District No. 1 of Clark County, Ark., and others. From a judgment dismissing the suit on the merits, plaintiffs appeal. Reversed and remanded, with directions.

The plaintiffs here and below complain on several grounds of the decree of the District Court, whereby, after evidence and final hearing, it dismissed their suit on its merits. They were citizens and residents of Illinois who own lands in the state of Arkansas. There is a general statute of that state known as Public Act No. 338 of 1915, Crawford & Moses' Digest of Laws of Arkansas 1921, page 1452, which authorizes the incorporation of road districts for the construction and improvement of roads by means of assessments of benefits and the levy and collection of taxes on lands benefited thereby to pay for such construction or improvement. The governing body of such a district is a board of commissioners acting under and pursuant to orders of the county court. This statute also provides a board of assessors, whose duty it is to ascertain, determine, and report to the commissioners the lands benefited and the amount of the benefit to each tract resulting from such improvement. After such a district has been organized, after the estimated cost of improvement has been reported to the commissioners by their engineers, after the lands benefited have been ascertained and the benefit to each tract has been assessed by the assessors and adopted by the commissioners and the county court, this statute authorizes the levy of a tax upon the benefited lands sufficient to pay the estimated cost of the improvement with 10 per cent. added for unforeseen contingencies. Crawford & Moses' Digest, § 5432.

Under this general law road improvement district No. 1 of Clark county, Ark., the chief defendant in this case, was organized to make about 86 miles of main roads radiating from Arkadelphia, the county seat, one north to the county line, one east, one west to Okolona and Antoine and the Little Missouri river, and one from Arkadelphia south through Gurdon to the south boundary of the county. There were about 250,000 acres of land in this district. The official estimated cost of the improvement was $460,000. The district was organized on or before February, 1919. The assessors of this road district determined the lands benefited, the amount of benefit to each tract in it, made their assessment of these benefits before February 13, 1919, and reported it to the board of commissioners on that day. The board of commissioners certified that the assessment so made by the assessors was made by the commissioners and filed it with the county clerk on February 17, 1919. That assessment has never been changed and a levy of taxes has been made upon it. About 800 acres of plaintiffs' lands were assessed and taxed under this assessment, and the plaintiffs make no complaint of this assessment or taxation.

Their complaint is that after that assessment was made, the district, its commissioners, assessors, and other officers made an assessment of alleged benefits of $23,380 on 10,274 acres of their land not within this original district, and threatened to and are now proceeding to collect taxes thereon based upon that assessment.

Their counsel contend in this court that the record here clearly demonstrates that this assessment was so grossly disproportionate between the property of the plaintiffs and other property similarly situated and the prop-

erty of other owners which was not assessed at all, that it was so arbitrary and so confiscatory that it and the collection of the taxes founded upon it constitute the taking of the property of the plaintiffs without due process of law and deprive them of the equal protection of the law.

These facts pertinent to this contention are clearly established by the record:

In February, 1919, after the assessment on the lands then in the district was made by the board of assessors and the commissioners, a proposition was agitated and a bill was introduced into the Legislature of Arkansas to form a new road district to build the road from Okolona through Gurdon to Nix's Ferry, hereafter called the Nix Ferry Road, on account of which the assessment and taxes in controversy were subsequently made. This Nix Ferry Road extends from a point near Okolona on the Arkadelphia and Okolona Road east through Gurdon to Nix's Ferry. It is about 26 miles long. The west 15 miles of it are in the original district, the lands in which had been assessed for the main roads radiating from Arkadelphia. Some of the owners of the lands in that district perceived that if this new district was formed their lands along or near this Nix Ferry Road would be taxed for that road also. To prevent such a tax on their land and to impose the taxes for the entire cost of the 26 miles of the Nix Ferry Road on the lands east of the original district where the plaintiffs' 10,274 acres were situated, they succeeded in preventing the passage of the bill for the Nix Ferry Road district and procured the passage of Special Act 374 of 1919 of the Laws of Arkansas (Road Acts), which was approved March 26, 1919. By its terms that act ratified and confirmed the assessment of the lands in the original district, authorized and required the commissioners of that district to construct the Nix Ferry Road, added to the lands in the original district a strip of land 6 miles in width, 3 miles in width on each side of the line of the Nix Ferry Road extending from the east line of the original district east to Nix's Ferry, a distance of about 11 miles, and including 76,000 acres; and directed the assessors of the district to "proceed as provided in said Act No. 338 of 1915 to make the assessments of benefits, and their assessments shall embrace all the property added to the said district by this act. The assessment shall be controlled and governed by the said Act No. 338 of the Acts of 1915."

Section 15 of Public Act No. 338 provided that whenever the commissioners should find that other lands not within the boundaries of the district were benefited by the improvement made or sought to be made, they should instruct the assessors to assess the benefits accruing to such lands and should file a separate report in the county court setting up the lands so benefited together with the assessment of benefits made by the assessors for the district. On June 30, 1919, the commissioners of this district adopted a resolution to the effect that about 95,000 acres more, including a strip of land 2 miles wide on the south side of the strip added by Act No. 374, a similar strip on the north side of the latter strip and other lands, aggregating about 95,000 acres, were benefited by the Nix Ferry Road, and on July 7, 1919, they directed the assessors to assess the benefits thereto. On July 10, 1919, the assessors certified to the commissioners their assessment of the benefits to each of the tracts in the 171,000 acres in these two additions, and on July 12, 1919 the commissioners transmitted this assessment to the county court and filed therein their report that they had made this assessment made by the assessors their assessment of the benefits to the lands described therein.

On July 12, 1919, the county court designated July 31, 1919, as the day for a hearing by it on the commissioners' assessment of benefits upon the lands added to the district by Act No. 374 and upon their assessment of benefits to the lands added to the district by the resolution of the commissioners and also for a hearing on exceptions and objections to the inclusion of the added lands in the district. At the same time the court ordered its clerk to give notice of the filing of the commissioners' report of the addition of the 95,000 acres of land and to give notice of the filing of the assessments "by two weeks' consecutive insertions in a publication having a general weekly circulation in Clark county," and calling upon the owners of land affected to show cause why the boundaries of the district should not be extended as reported by the

commissioners and to make any objections they had to the assessments at the hearing on July 31, 1919. Crawford & Moses' Digest, § 5423. The order of the court containing the notice was published as directed, but the plaintiffs had no notice or knowledge of it, or of these additions of the lands to the original district, or of the assessments, and on July 31, 1919, the county court ordered the lands described in the commissioners' report added to the district and the assessments on the plaintiffs' land in these added lands approved and confirmed. Public Act No. 338 of 1915, Crawford & Moses, § 3425, allows an owner of land to appeal from the judgment of the county court affirming an assessment within 10 days from the date of the judgment, but as the plaintiffs had no knowledge of the assessment or the judgment, they took no appeal.

The Legislature of Arkansas subsequently passed an act, which by its terms provided that all irregularities and errors in the proceedings to which reference has been made were cured, that all the lands described in the assessments were benefited, and that all the assessments and proceedings were ratified and confirmed. Act No. 358 of the Laws of the Special Session of the Legislature of 1920.

Gurdon is the most important town on the line of the Nix Ferry Road. It is about 4 miles west of the east line of the original district, the lands in which were assessed for the main roads before the construction of the Nix Ferry Road was authorized, and the latter road extends from the Okolona Road, which is about 11 miles west of Gurdon easterly through that town to Nix's Ferry, which is about 15 miles east of it. Nix's Ferry is not a commercial metropolis. It consists of one residence and a ferry boat that runs across Ouachita river. If special benefit was conferred upon lands abutting upon or in the vicinity of that road east of Gurdon by its construction, that benefit arose because it provided for the owners and occupants thereof a more convenient and useful means of travel and transportation to and from Gurdon. Fifteen miles of this road lie in the original district assessed for the main road and 11 miles of it lie east of that district. There is no evidence or fact in the record tending to prove that no benefits were conferred by the construction of this road upon the lands along and in the immediate vicinity of the west 15 miles of the Nix Ferry Road or that all the benefits derived from it were derived by the added area in which the plaintiffs' 10,274 acres are situated along the east 11 miles of the road. Nevertheless, none of the lands adjacent to or in the vicinity of the west 15 miles of the road was found by the assessors or commissioners to be benefited by or was assessed or taxed on account of its construction, while the lands along the east 11 miles of it were assessed special benefits to an amount sufficient to pay and were taxed not only for the costs of the east 11 miles of the road, but for the official estimated cost of the entire 26 miles of the road which was more than $115,000. At the time of the trial below the commissioners had built 8 miles of dump and had expended $15,000 on the west 15 miles of this road.

The assessors and commissioners assessed the benefits to the lands in the added area alongside the east 11 miles of the road by the zone system. They placed the lands in this area within 2 miles on each side of the proposed line of the road in the first zone, and assessed benefits to them at the rate of $2 per acre plus 20 per cent. of their assessed valuation for general taxes; those more than 2 miles and less than 3 miles distant from that line in the second zone, and assessed the benefits to them at the rate of $1.50 per acre, plus 20 per cent. of their assessed valuation; and those more than 3 miles and less than 5 miles distant from that line in the third zone, and assessed the benefits to them at the rate of $1 per acre, plus 20 per cent. of their assessed valuation.

Some of the lands thus assessed were cleared and under cultivation; some of them were improved with residences occupied by their owners; some of them were timbered; some of them were wild cut-over lands; some of them were low and marshy; some of them were valuable; and some of them were practically worthless.

Terre Noire creek ran diagonally from northwest to southeast across the entire strip assessed about 4 to 7 miles east of the west end of the strip.

The bottom lands of this creek were from 3 to 5 miles wide and were often overflowed and impassable.

Neither the assessors nor the commissioners viewed these lands, or took any testimony for the purpose of making their assessments. They did not vary their assessments of benefits to any of these lands from this zone standard whether the lands were improved and occupied by residents or vacant; whether they were cultivated or wild; whether they were timbered or cutover; whether they were dry and useful or boggy and useless; whether they were valuable or worthless. They relied upon the variation of their assessments effected by the use of the 20 per cent. of the assessed valuation of the land for the purposes of taxation, and declined to exercise their judgment or judicial discretion to vary their assessments of the benefits to the lands according to the varying benefits they would actually receive on account of their differences in character, improvement, cultivation, and value.

The strip of land extending along the east 11 miles of the Nix Ferry Road between a line 3 miles south and a line 5 miles south of the proposed line of that road is largely composed of the plaintiffs' lands, and the major portion of their lands involved in this suit is in this strip. There was and is a good public traveled road called the Kansas Road extending easterly from Gurdon and splitting this 2-mile strip. There were some houses, some residents, and some cut-over lands along this road, and it had been used by such residents and by others for travel and transportation to and from Gurdon for 12 years. There was a passable public road from this Kansas Road north to the Nix Ferry Road about 6 miles east of Gurdon and a crossway about 3 miles east of Gurdon, over private property a part of the way from the Kansas Road to the Nix Ferry Road; but the distances from any point on the Kansas Road by either of these crossways to the Nix Ferry Road and thence to Gurdon was from 3 to 6 miles greater than the distance by the Kansas Road, and the evidence at the trial below was conclusive that the residents, occupants, and owners of lands along the Kansas Road and others would rarely, if ever, use the Nix Ferry Road, and that the lands in this 2-mile strip would receive no special benefit from the construction thereof. The assessors and the commissioners, however, never considered these facts nor the existence and effect of the Kansas Road, but assessed benefits to the lands abutting upon and within 2 miles of it just as they would have assessed them if the Kansas Road had not been there.

R. E. Wiley, of Little Rock, Ark., for appellants.

J. W. House, Jr., of Little Rock, Ark. (McMillan & McMillan, of Arkadelphia, Ark., and Coleman, Robinson & House, of Little Rock, Ark., on the brief), for appellees.

Before SANBORN and KENYON, Circuit Judges, and SYMES, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The object of the assessment of benefits and of the taxation challenged by this suit was to collect moneys to pay the cost of the construction of the 26 miles of the Nix Ferry Road from the Arkadelphia and Okolona Road easterly through Gurdon to Nix's Ferry. If lands sufficiently benefited could have been found along the 26 miles of that road, such an assessment and taxation might have been lawfully made under Public Act No. 338 of the Acts of Arkansas of 1915, which is the general law of that state for the construction of improvements by means of the assessments of benefits to property abutting upon or in the vicinity thereof and which provided for the formation of a proper road district and for the addition in a proper way of lands benefited

to a district already formed and authorized, and required the assessors and commissioners to assess the benefits to and levy the taxes on each of the particular tracts of land along the 26 miles of such a road as the Nix Ferry Road proportionately to the benefits conferred upon the respective tracts abutting upon or in the vicinity thereof by the improvement. Under such an assessment and taxation, a tract of 40 acres of land abutting upon the road 7 miles west of Gurdon and of approximately the same value as a tract of 40 acres of land abutting on the road 7 miles east of Gurdon would naturally have been assessed approximately the same amount of benefits and subjected to approximately the same amount of taxes. But in this case the assessors and commissioners did not make such an assessment or taxation. On the other hand, they assessed sufficient benefits and levied sufficient taxes based thereon against the lands along the east 11 miles of the road to pay the entire cost of the construction of the 26 miles of the road and assessed no benefits and levied no taxes against any of the lands along the westerly 15 miles of the improvement on account thereof, although the latter lands lie in the same county and bear approximately a similar relation to the road and apparently could not fail to be benefited to some extent thereby if the lands along the east 11 miles thereof were so benefited.

[1, 2] Why did the assessors and commissioners so radically depart from the proportionate assessment of benefits and levy of taxes prescribed by the General Laws of Arkansas? Undoubtedly it was because they interpreted and understood Special Act No. 374 of March 26, 1919 (Road Acts), which added to their road district certain lands east of their district and authorized and required them to build the Nix Ferry Road, to require them to assess on the added lands along the east 11 miles of that road sufficient benefits, and to impose upon them sufficient taxes to pay the entire cost of the 26 miles of the road and to let the lands along the west 15 miles of that road go free of assessment and taxes therefor. And, after thoughtful consideration of this special act and of the general law found in Public Act No. 338, the conclusion is that their interpretation of this special act was correct. It provided that they should "proceed as provided in said Act 338 of 1915 to make the assessments of benefits and their assessments shall embrace all the property added to the district by this act. The assessments shall be controlled and governed by the said Act No. 338 of the Acts of 1915." If the express provision of this act just quoted had not been inserted therein the provisions of the general law, Act No. 338, would have applied and would have required them to assess against the lands along the west 15 miles of the road as well as against the lands along the east 11 miles thereof, the proportionate benefits derived from the improvement by the respective tracts. The special act, however, expressly required them to assess "all the property added to the said district by this act," that was to say, all the land along the east 11 miles of the road. But it did not require them to assess under it, as the general law in the absence of this act would have done, any of the lands benefited by the Nix Ferry Road along the west 15 miles of it, which were in the original district. The expres-

sion of one thing is the exclusion of the other. The requirement that they should assess all lands added to the district and the exclusion of a requirement that they should assess any of the lands in the original district was in effect a mandate of the Legislature that they should not assess the latter. And where a special act and a general law are inconsistent, they must, if possible, stand together; the former as the law of the particular case, and the latter as the general law of the land. King v. Pomeroy, 121 Fed. 287, 294, 58 C. C. A. 209; Christie-Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464. The result is that the true construction of Special Act No. 374 (Road Acts) is that it required the assessment of benefits under it against all the lands added to the district thereby and excluded the lands in the original district along the west 15 miles of the improvement from any assessment of benefits or taxation thereunder. Such undoubtedly was the purpose, object, and effect of the passage of that act. The provisions of the act that the assessors shall proceed as provided in Act 338 of 1915 were necessarily restricted in their application by the other provisions of the act to the assessment of the property added to the district thereby.

The assessors and commissioners subsequently added to the lands specified in Act 374 two tiers of sections of land south of a line parallel to and 3 miles south of the proposed line of the Nix Ferry Road which were largely composed of the plaintiffs' lands and in which the major portion of their lands involved in this suit were situated. There was and had been for 12 years a good road known as the Kansas Road, which extended from Gurdon east of it splitting the lands in these two tiers of sections. There were some residences occupied by their owners and some cultivated lands along this road. It was the most direct and convenient means of travel and transportation for the owners and occupants of these lands to and from Gurdon. There was no way they could use the Nix Ferry Road between their land and Gurdon without traveling several miles more than they did travel to go or come by the direct Kansas Road, and the building of a parallel road 4 to 6 miles north of the Kansas Road would naturally diminish rather than enhance the value of the lands along and within 2 or 3 miles of the latter so that the physical facts practically prohibited any special benefit to the lands within 2 or 3 miles of the Kansas Road from the construction of the Nix Ferry Road. Nevertheless the assessors and the commissioners in making their assessments of benefits and the taxes founded thereon gave no consideration or effect to the existence of this Kansas Road, but assessed special benefits against the lands abutting and within 2 miles thereof on account of the construction of the Nix Ferry Road by the same hard and fast zone system that they would have used if there had been no Kansas Road there. In view of these facts, this assessment of benefits and the taxation based upon it seem at first sight to be grossly disproportionate between the lands benefited by the construction of the Nix Ferry Road, arbitrary and excessively oppressive.

[3] Counsel for the defendants below, however, argue that this assessment of benefits and taxation of the lands along the east 11 miles

of the Nix Ferry Road, while no benefits were assessed to or taxation imposed upon lands along the west 15 miles thereof on account of the construction of this road, effects no discrimination or disproportionate assessment or taxation, because all lands within 1 mile of any of the main roads or of any of the lateral roads in the original district was put in the first zone, and lands further away in the second zone, etc., and those lands were assessed and taxed by the zone system. Conceding this to be the fact, it is immaterial here, because none of the assessments or taxes on lands in the original district, hence none on the lands along the west 15 miles of the Nix Ferry Road, were assessed for benefits or taxed on account of the construction of the Nix Ferry Road. All those assessments and taxes were on account of the construction of the four main roads radiating from Arkadelphia. All the assessments of benefits to lands in that district were made and confirmed before the construction of the Nix Ferry Road was authorized, and those assessments and taxes have never been modified.

[4] It was indispensable to the taking of the property of the plaintiffs by due process of law by means of the assessment of benefits to it on account of the construction of the Nix Ferry Road and by means of taxation based thereon that the assessment of benefit to it should be just and fairly proportionate to the assessment of benefits to other property benefited by that improvement. The plaintiffs' property was heavily assessed for benefits and taxed over $20,000 to pay the cost of the construction of the 26 miles of that road, while the property of other landowners abutting to and in the vicinity of the west 15 miles of that road was assessed nothing for benefits and subjected to no taxes on account of its construction.

In Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 59, 36 Sup. Ct. 254, 60 L. Ed. 523, taxes for the paving of a street were levied on all the property fronting on the street on the basis of one-fourth of the cost according to frontage, and three-fourths of the cost according to acreage; the area to be ascertained by a rule prescribed in the ordinance which authorized the tax. That rule, when applied, resulted in disproportionate taxation of the lands fronting on the street. The Supreme Court, speaking of the ordinance which prescribed the basis according to which the taxes were laid, said:

"If the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred the law cannot stand against the complaint of one so taxed in fact." Kansas City Southern Ry. Co., et al., v. Road Improvement District No. 6 of Little River County, Arkansas, 256 U. S. 658, 660, 661, 41 Sup. Ct. 604, 605 (65 L. Ed. 1151).

If the Supreme Court could not sustain taxes assessed under a law or ordinance which resulted in the taxation of all property abutting on an improvement because the lots so abutting were taxed disproportionately between themselves, this court ought not to sustain an assessment of benefits and taxation based thereon under a law which required and has resulted in the assessment of benefits to and the taxation of all the lands within 5 miles on each side of the east 11 miles of a road 26 miles long for the entire cost of the road and the exemption

of all the lands on either side of the west 15 miles of that road from any assessment of benefits whatever and from the payment of any taxes on account of that improvement. Under such a law there is no reasonable presumption that substantial justice will be done, but there is not only the probability but also the certainty that the parties in interest and their lands will be taxed disproportionately.

Nor could this disproportionate, clearly excessive, and arbitrary assessment and taxation stand if the statutes of Arkansas had authorized or permitted the assessors or commissioners to make a just, fair, and equitable assessment upon and taxation of all the property benefited, or if this court is mistaken in its interpretation of the statutes and they did empower those officers to make such an assessment and taxation. And that because those officers have made and the defendants are proceeding to enforce this disproportionate, arbitrary, and excessive assessment and taxation, and—

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U. S. 356, 361, 369, 373, 374, 6 Sup. Ct. 1064, 1073 (30 L. Ed. 220.)

[5] Counsel for the defendants contend that this assessment and taxation may be sustained because the Legislature of Arkansas subsequently enacted several laws whereby it in effect declared this assessment and taxation to be just and fair, and that all irregularities and defects therein were cured. But this grossly disproportionate, arbitrary, and excessive assessment of benefits and the taxation based upon it does not constitute that due process of law without which the Constitution of the United States prohibits the taking of the property of the owner without compensation for public use, and no approving acts or fiats of the Legislature of a state enacted without notice to the owners of the property and without opportunity to be heard before any tribunal upon the merits of the issue could constitute such assessments and such taxation or the act or acts which approved them due process of law or relieve the assessment and taxation from the grossly disproportionate, arbitrary, and excessive character which brings them under the ban of the Fourteenth Amendment to the Constitution. Road Improvement District No. 2 v. Missouri Pacific Railroad Co. (C. C. A.) 275 Fed. 600, 604.

[6] Counsel earnestly contend that the plaintiffs are estopped from maintaining an original suit in the federal court for relief from this excessive and discriminatory assessment and taxation because their land was adjudged benefited by the county court of the state to the amount specified in the reports of the commissioners after the notice of hearing upon that question had been published, as directed by the statutes of Arkansas and the formal proceedings for the assessment and taxation conformed to the provisions of those statutes. In support of this contention, they have cited, and the court has carefully read and considered, the opinions of the Supreme Court in Spring Valley Water-Works v. Schottler, 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed.

173; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Hibben v. Smith, 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195; English v. Arizona, 214 U. S. 359, 29 Sup. Ct. 658, 53 L. Ed. 1030; French v. Barber Asphalt Paving Co., 181 U. S. 340, 341, 21 Sup. Ct. 625, 45 L. Ed. 879; Briscoe v. Rudolph et al., 221 U. S. 547, 31 Sup. Ct. 679, 55 L. Ed. 848.

But the plaintiffs were residents and citizens of Illinois. The legal proceedings pursuant to the statutes of Arkansas for the assessment and the publication of the notice of the hearing thereon, the judgment of confirmation thereof, and the expiration of the time to appeal therefrom, occupied less than two months. The plaintiffs had no actual notice of any of these proceedings until more than five months after their time to appeal had expired. The only notice of the hearing required to be given was the publication of a notice thereof twice in a newspaper published in Clark county, Ark., and the question is: Were these citizens of the United States estopped from all relief by an original suit in a federal court from this discriminatory and excessive assessment and taxation because the proceedings therefor were in accord with the statutes of Arkansas? The question is not entirely novel.

The Fourteenth Amendment to the Constitution of the United States contains this prohibition:

"Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

By the Constitution and the laws of the United States the power is conferred and the duty is imposed upon a federal court to relieve, by its decree, injunction, or other process, a citizen of the United States who properly invokes its aid from an arbitrary discriminatory or excessively oppressive exercise of the legislative power of a state which, without due process of law or compensation, deprives or threatens to deprive him, of a part or all of his property, or of the equal protection of the laws in violation of this amendment to the Constitution.

In Norwood v. Baker, 172 U. S. 269, 271, 276, 277, 19 Sup. Ct. 187, 43 L. Ed. 443, the owner of a lot of land in the village of Norwood brought a suit in equity against the village to enjoin the enforcement of an assessment upon her lot for the opening of a street through it, upon the ground that the assessment was so excessive that its threatened collection would deprive her of property in violation of the Fourteenth Amendment. The proceedings for the opening of the street and the making of the assessment were in conformity to the statutes of the state providing for such an opening and assessment, and the village pleaded this fact in answer to the complaint. But the Circuit Court adjudged the assessment violative of the Fourteenth Amendment and perpetually enjoined its enforcement, and the Supreme Court affirmed its decree and said:

"There is a point beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the own-

ers do not, in fact, pay anything in excess of what they receive by reason of such improvement."

That court further said:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

In Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 479, 482, 483, 484, 485, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190, the plaintiff brought a suit in the federal court for an injunction against the collection of a tax of $2,000 upon its land on the ground that its land was not benefited by the drainage improvement and that the tax was violative of the Fourteenth Amendment. The statutes of the state empowered its police juries to determine what lands were so benefited by the improvement that they should be included in the drainage district and subjected to taxation for the improvement, and the juries, pursuant thereto, had included the plaintiff's land therein. The proceedings for the creation of the district and the levy of the tax were regular and in accordance with the provisions of the statutes of the state. The United States District Court dismissed the plaintiff's suit on the ground that it was estopped from challenging the taxation by the proceedings therefor by the state officers in accordance with the state laws. The Supreme Court reversed that decree and directed the rendition of a decree for the relief sought by the plaintiff. The purpose and effect of the inclusion of the plaintiff's lands in the district and the imposition of the tax upon them in that case and in the case at bar appear to have been strikingly similar, if not identical.

In Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 59, 36 Sup. Ct. 254, 60 L. Ed. 523, proceedings in strict accordance with the laws of the state and with the ordinance of the city had resulted in the levy of a tax for street improvement upon the property of the defendant and in a judgment of the state court for the amount thereof. The assignee of that judgment brought an action upon it, and the defendant insisted that the tax on its property was disproportionate to the taxes assessed upon the property of others benefited by such improvement, and the Supreme Court sustained that defense in the face of that judgment of the state court.

In Abernathy v. Fidelity National Bank & Trust Co. (D. C.) 274 Fed. 801, 802, 804, 805, 806, 807, a bill in equity was presented to the United States District Court by the complainants for a perpetual injunction against the collection of taxes based on an assessment of benefits to their property on account of the grading of Meyer Boulevard in Kansas City, Mo., on the ground, among others, that the assessment and taxation of their property were violative of the Fourteenth Amendment because they were arbitrary and greatly in excess of the benefit conferred. The defendants presented, insisted upon, and argued the defense that the plaintiffs were estopped from obtaining any relief by that original suit in the federal court, by the assessment and taxation proceedings and the previous judgment of the state court therein that the respective tracts of lands involved should be charged

with the liens of the taxes based upon the challenged assessment. The proceedings for the assessments of benefits and taxation were regular and in conformity with the relevant state statutes, but the court overruled the defense and granted the decree sought because the assessment and taxation of the plaintiffs' land were so greatly in excess of the special benefits accruing to it from the improvement as to be violative of the constitutional prohibition of the taking of private property for public use without compensation.

In Thomas v. Kansas City Southern Railway (C. C. A.) 277 Fed. 708, 709, 711, 712, 713, the plaintiffs presented to the federal court below a bill in equity for an injunction against the sheriff and collector of Sevier county, Ark., and the directors of a drainage and levee district of that state from collecting certain assessments of benefits to their property on account of drainage and levee improvements. The proceedings for the assessment were regular and in conformity with the pertinent statutes of the state. Nevertheless, the District Court sustained the suit and enjoined the collection, and this court affirmed the decree on the ground that the assessment of benefits against the property of the plaintiff was so grossly disproportionate to the assessment of the benefits to other property assessed for the improvement that it constituted "a discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law."

And the conclusion is that the plaintiffs were not estopped by the regularities of the proceedings in making the assessment and taxation under consideration of the assessors and commissioners of the road district and the county court, from maintaining this original suit in the federal court for just and equitable relief from the violation of the Fourteenth Amendment committed and threatened by the enforcement of the discriminatory and arbitrary assessment of benefits and taxation of which they complain.

[7] An assessment of benefits to property from a local improvement and taxation based thereon grossly disproportionate between the parties interested in the property benefited by the improvement pursuant to a basis of assessment prescribed by law or ordinance "of such character that there is no reasonable presumption that substantial justice will be done, but the probability that the parties will be taxed disproportionately to each other and to the benefit conferred cannot stand against the complaint of one so taxed." Such an assessment and taxation deprives the victim of the equal protection of the laws. Norwood v. Baker, 172 U. S. 269, 276, 278, 279, 19 Sup. Ct. 187, 43 L. Ed. 443; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 58, 36 Sup. Ct. 254, 60 L. Ed. 523. Private Act No. 374 of 1919 (Road Act), in accordance with which the assessment and taxation here challenged were made, prescribed such a basis of assessment, and upon that basis the assessment and taxation were made.

[8] Although the law or ordinance, pursuant to which an assessment of benefits and taxation thereunder are made authorizes or permits a fair and just assessment of benefits and levy of taxes, nevertheless, if the officers executing and applying that law make an assessment of benefits and a taxation thereon, that is oppressively excessive,

arbitrary or confiscatory, or grossly disproportionate, or palpably discriminatory between the parties and property benefited thereby, that assessment and taxation cannot stand against one so assessed or taxed to his injury. Kansas City Southern Railway v. Road Improvement District No. 6, 256 U. S. 658, 660, 661, 41 Sup. Ct. 604, 65 L. Ed. 1151; Thomas v. Kansas City Southern Ry. Co. (C. C. A.) 277 Fed. 708, 709, 711; Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 482, 483, 484, 485, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190.

One so assessed or taxed to his great injury is not estopped from maintaining an original suit in the proper Federal Court for relief therefrom on the ground that such a taxation or assessment is violative of the Fourteenth Amendment to the Constitution by the fact that the proceedings for the assessment or taxation may have been in accordance with the provisions of the statutes of the State. Norwood v. Baker, 172 U. S. 269, 271, 276, 277, 19 Sup. Ct. 187, 43 L. Ed. 443; Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 479, 482, 483, 484, 485, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 59, 36 Sup. Ct. 254, 60 L. Ed. 523; Abernathy v. Fidelity National Bank & Trust Co. (D. C.) 274 Fed. 801, 802, 805, 806, 807; Thomas v. Kansas City Southern Ry. (C. C. A.) 277 Fed. 708, 709, 711, 712, 713, affirmed by the Supreme Court, opinion filed April 9, 1923, 43 Sup. Ct. 440, 67 L. Ed. ——.

The assessment and taxation involved in this suit are grossly disproportionate and deprived the plaintiffs of the equal protection of the laws in that they burdened the property along the east eleven miles of the Nix Ferry Road with the cost of the west fifteen miles thereof, while they imposed no burden whatever on any of the property along the west fifteen miles of the road on account of its construction.

[9, 10] They are arbitrary and grossly excessive because they burden the property along the east 11 miles of the Nix Ferry Road with the cost of the construction of the 11 miles of that road west of Gurdon, which is of no special benefit to the property east of Gurdon for the reason that the main road north and south from Arkadelphia passes through Gurdon, and because they substantially burden the property along side of and in the immediate vicinity of the Kansas Road upon which the construction of the Nix Ferry Road confers no special benefits.

Let the decree below be reversed, and let this case be remanded to the court below, with directions to render a decree to the substantial effect that the assessment of benefits to the plaintiffs' lands involved in this suit and the taxes based thereon are violative of the Fourteenth Amendment to the Constitution and void, that the cloud placed upon those lands by the proceedings for that assessment and for those taxes be removed, that the defendants and their successors in office be perpetually enjoined from enforcing such assessment and the taxation based thereon against the plaintiffs or any of their lands or any part thereof, and that the defendant road improvement district

No. 1 of Clark county, Ark., pay to the plaintiffs the $1,032.16 which the latter paid under .protest, with interest thereon from the time the plaintiffs paid that sum until it is repaid to them, and that the defendants pay the costs of this suit in this court and in the District Court.