**THOMAS, Sheriff, etc., et al. v. KANSAS CITY SOUTHERN RY. CO. et al.**

(Circuit Court of Appeals, Eighth Circuit. December 13, 1921.)

No. 5489.

1. **Appeal and error ☞175—Contentions not within issues not considered.**

Contentions not within the issues made by the pleadings cannot be considered on appeal.

2. **Statutes ☞47—Description of drainage district boundary line held sufficiently definite.**

Acts Ark. 1915, p. 747, § 1, as amended by Acts 1917, p. 348, § 1, defining a portion of the boundary line of a drainage district as "thence north to the line of the hills which is entirely above overflow; thence northwesterly, following said line of said hills," etc., held sufficiently definite; "the line of the hills * * * entirely above overflow" clearly meaning the overflow line along the southern slope, and not that on the other side of the hills.

3. **Drains ☞71—Traffic benefits held sufficient to authorize assessment of railroad property.**

Traffic benefits resulting from the haul of increased croppage on lands within a drainage district, because of overflow protection, are sufficient to authorize assessment of railroad property for improvements within such district, though there were no direct benefits, by way of protecting the company's right of way from overflow.

4. **Drains ☞67—Assessment for local improvements cannot stand, if palpably arbitrary or discriminatory.**

While the Legislature has a wide discretion in declaring the existence and amount of benefits from local improvements, such benefits must be estimated on contiguous property according to some standard which will probably produce approximately correct results, and an assessment cannot stand, if palpably arbitrary or discriminatory.

---

5. **Constitutional law ⊛233—Drains ⊛67—Assessment against railroad property in drainage district held so discriminatory and arbitrary as to deny equal protection.**

Where a railroad, in a drainage district comprising 12,000 acres, owned only 40.43 acres and 3.61 miles of track, along the extreme west and northwest boundaries, constructed mostly on high fills and a trestle above overflow, an assessment of half the cost of the improvement, which would increase land values at least $250,000, was so palpably discriminatory and arbitrary as to deny equal protection of the laws.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Kansas City Southern Railway Company and another against Will F. Thomas, Sheriff and Collector, etc., and others. Decree for plaintiffs, and defendants appeal. Affirmed.

James D. Head, of Texarkana, Ark., for appellants.
James B. McDonough, of Ft. Smith, Ark., for appellees.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is a complaint by the Kansas City Southern Railway Company and the Texarkana & Ft. Smith Railway Company against Little River drainage and levee district No. 1 (of Sevier county, Ark.), Will F. Thomas (sheriff and collector of Sevier county), E. W. Beeson, G. A. Henry, and Frank Ethridge (directors of the above district). The purpose of the action is to enjoin the collection of certain assessments made against the property of the railway companies located within the district. The assessments were for drainage and levee purposes of the district. The district was created by an act of the Legislature of Arkansas. Upon final hearing a permanent injunction was decreed, from which the defendants appeal.

The court found all issues and contentions adverse to complainants, except one, and partially as to another. The court held, as to the first one, that a higher rate of taxation was imposed upon the railways than upon other property owners, by reason of the fact that, while other owners were taxed upon the basis of the assessed value of land lying within the district, the railways were taxed, in addition, upon the value of their franchises and other intangibles. In reaching this conclusion the court felt bound by the decision of this court in Bush v. Branson, 248 Fed. 377, 160 C. C. A. 387. As to the other, the court held that there were no direct benefits to the property of the railways, except such as might arise from increase of traffic through increased production upon the lands protected by the district. Appellants contest these two conclusions, contending that the franchise value is not taxed, and that there were other and direct benefits to the railways. The court correctly construed and applied the above decision of this court in the Bush Case, but since the decree in this case the Supreme Court has reversed this court in the Bush Case (251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215) on this point. Therefore the ground upon which the court based its decree is insufficient.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Appellees contend, however, that there were other sufficient grounds for the injunction decree, and that this court is not bound by the findings of the trial court adverse to them, but should anew examine those grounds, and, if any are found to be sufficient, should uphold the decree. They contend (a) that the district is illegal and void, because of being uncertain and indefinite in the definition of its boundaries; (b) that the district is void, and the assessments illegal, because there are no directors therefor designated by the act of 1917; (c) that both the acts of 1915 and 1917 forming the district are invalid, because no notice nor opportunity for hearing was afforded the owners of land included therein; (d) that the land of appellees is in no manner benefited; (e) that the assessments are wholly arbitrary, unjust, illegal, and void; (f) that, as to appellees, the above two acts are an arbitrary abuse of the taxing power, amounting to confiscation of appellees' property; (g) that the assessments were made without notice to appellees. Of the above contentions, three—(b), (c), and (g)—are not within the issues made by the pleadings, and therefore cannot be considered.

[2] The contention that the boundary line of the district is uncertain and indefinite refers only to the northern line of the district. The legislative act of 1915 (Act 186, § 1) fixed this line from the northeast corner of the district as "west to the line where the lands subject to overflow join the hills or highlands." Appellees expressly admit that this would have established "a definite and fixed line," which "could easily be laid out." The amendatory act of 1917 (Act 79, § 1), however, continued the northern part of the east line of the district, and defined that portion of the boundary and the northern line as "thence north to the line of the hills, which is entirely above overflow; thence northwesterly, following said line of said hills, to the north line of section 2, township 10 south, range 32 west; thence west to Little river." The claim of appellees is that the description "north to the line of hills" designated no point, because there was no line of hills, and that the further description, requiring the north line to "follow said line of said hills," designated no line at all, or any basis for determining any line, because the "line of said hills" might mean any of several things, including the foot of the hills on either side, or the crest of the hills. The evidence abundantly establishes, and appellees' counsel admit, that there was a rise in ground northerly or northeasterly. This would sufficiently identify what the Legislature meant by "hills." The point designated as the northeastern corner of the district, as the point where the eastern line extended north would reach the hills where they were "entirely above overflow," was ascertainable from this description, and was therefore sufficiently definite.

As to that part of the description defining the course of the northerly line, the requirement is that it should follow "said line of said hills." The "said line" is "the line of the hills, which is entirely above overflow." There is no doubt that this meant the overflow line along the southern slope of the hills. The purpose of the act was to protect lands subject to overflow, and to place the burden of that protection upon the lands so benefited, and no interpretation of the language

used is justified, nor can any reasonable doubt be entertained, which would place the line at the overflow line on the other side of the hills. Appellees argue that the uncertainty of the description is established by the facts that this line of hills is broken in several places by streams, and that the engineers, in laying this northerly line of the district, did not follow these breaks northerly along the overflow line, but struck directly across these small valleys. This action of the engineers might be pertinent to the inquiry as to whether they had properly followed or laid down the line described in the act, but it is no evidence of any uncertainty in the description in the act. We think the description sufficiently definite.

[3] The contention that appellees' land was not benefited is of more substance. The court found that there were no direct benefits by way of protecting the rights of way of appellees from overflow by flood waters, but found that there would be resulting traffic benefits through haul of the increased croppage on the lands within the district because of overflow protection. It also determined that such traffic benefit was sufficient to authorize assessment, citing St. Louis & San Francisco Railroad Co. v. Bridge District, 113 Ark. 496, 168 S. W. 1066. The Supreme Court of the United States has expressly decided this traffic benefit as one to be taken in account, when it said in the case of Bush v. Branson, 251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215:

"To this must be added the obvious fact that anything that develops the territory which a railroad serves must necessarily be of benefit to it, and that no agency for such development equals that of good roads."

The evidence is that at present only about 10 per cent. of the acreage within the district is tilled or tillable because of water, but that the wild land is rich, and would be cultivated, if protected from overflow; that appellees were the only railroads serving this locality. There is the further consideration, upheld in the Bush Case, 251 U. S. 182, at page 190, 40 Sup. Ct. 113, 64 L. Ed. 215, that the Legislature, by inclusion of appellees' property within the district, has declared that it is benefited. Under the Bush opinion, in the Supreme Court, this would tend to establish the existence of traffic benefits, such as would justify assessment for district purposes.

[4] There remains the contention that the assessment of benefits made is arbitrary, unjust, illegal, and void. This is based on the claim that the basis of assessment is such as to result in the property of appellees bearing more than one-half of the burden of the improvements, while such property is in no wise benefited thereby. In view of what has been said above, it is clear that appellees are benefited; but this does not preclude them from claiming that the amount, or relative proportion, of assessment made is void. While the Legislature has a wide discretion in declaring both the existence of benefits and the amount thereof, yet that discretion is not limitless nor irrestrainable by the courts. Such "benefits from local improvements must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results." Kansas City Southern Ry. Co. v. Road Improvement Dist., 256 U. S. ——, 41 Sup. Ct.

604, 65 L. Ed. ——, decided by the Supreme Court of the United States, June 6, 1921. Such assessment cannot stand, if it is "palpably arbitrary," or if it is palpably discriminatory. Kansas City Southern Ry. Co. v. Road Improvement Dist., supra; Houck v. Little River Drainage Dist., 239 U. S. 254, 262, 36 Sup. Ct. 58, 60 L. Ed. 266; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. 254, 255, 400, 60 L. Ed. 523, 526, 1239). Therefore the test of law to be applied to the facts of this case is whether or not the facts show this assessment to be palpably arbitrary and discriminatory.

[5] The basis of valuation here employed for benefits is the valuation of all property within the district for general taxation. General taxation and assessment for special benefits are essentially different in their basic characteristics and their legal theories. One is grounded upon the idea that all property should bear a proportion, based upon value, of the burden of general taxation; the other is grounded upon the idea that property actually benefited by a public improvement should respond in proportion to the benefit so received. Obviously, any connection between the value of a given piece of property for general taxation and its value for benefit assessment taxation is purely accidental. Therefore the circumstance that the Legislature here took them to be identical carries no more force than if some other basis of value had been selected. Examining the evidence, the result is as follows: The district is purely rural. It comprises (as amended by the act of 1917) approximately 12,000 acres. About 10 per centum of this acreage is now cultivated; the balance being rich wild land, untillable because of marshy or overflow conditions. The improvements contemplated would render practically all of this wild land tillable. The value of all lands in the district (now worth from $8 to $40 per acre) would be more than doubled in value by the improvements. Appellees have, within the proposed district, 2.72 miles of main line track and .89 miles of side track. It is all located along the extreme western and northwestern boundaries of the district. The acreage of this railroad property is 40.43 acres. It is, for the most part, constructed upon high fills and a trestle, and is above overflow. The only benefit to appellees from this improvement would be through increased traffic, because of any increased shipments resulting from greater cultivation of the land within the district because of the improvement. The basis taken as the benefits to the various pieces of land and the property of the appellees was the valuation for general taxation purposes. This value as to appellees' property included intangibles. The contemplated improvement would cost from $70,000 to $75,000. The property of appellees would pay about half of this cost.

The showing thus made reveals this result, to wit: That the cost of an expensive improvement, which will increase the value of about 12,000 acres of land at least a quarter of a million dollars, is to be half paid by appellees, which have within a rural locality 3.61 miles of track, and which are benefited by a problematical increase of traffic through the greater production from the above benefited acreage. The following statement in the opinion in Kansas City Southern Ry. Co.

v. Road Improvement Dist., supra, seems directly applicable to these facts:

"It is doubtful whether any very substantial appreciation in value of the railroad property within the district will result from the improvements; and very clearly it cannot be taxed upon some fanciful view of future earnings and distributed values, while all other property is assessed solely according to area and position. Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all."

The facts of this case clearly reveal an instance of a "discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law," such as is condemned in the cases cited above.

The decree must be and is affirmed.