## BOARD OF DIRECTORS OF MILLER LEVEE DIST. NO. 2 v. PRAIRIE PIPE LINE CO.

(Circuit Court of Appeals, Eighth Circuit. August 9, 1923. Rehearing Denied September 21, 1923.)

No. 6159.

1. **Constitutional law ⬥229(3)—Valuation of property of an owner by a levee district for tax purposes held discriminatory, and a denial of equal protection.**

The levy of a special tax by a levee district on the property of a pipe line company on a valuation which equaled or exceeded its actual value, while other real property in the district was assessed at from 10 to 16 per cent. of actual value, *held* palpably arbitrary and discriminatory as to amount to a denial of the equal protection of the law.

2. **Constitutional law ⬥284(1)—Method of valuation of property by a levee district for tax held a taking of property without due process.**

Where a state statute provides for the assessment of property of pipe line companies by the state tax commission as an entirety, including both real and personal property, and the apportionment of the assessment between counties, towns, and district according to mileage of the pipe lines therein, the taking of such assessment as the basis for the levy of a

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

special tax by a levee district, having power to tax only real estate, is unwarranted, and constitutes a taking of property without due process of law.

3. **Levees and flood control** ⚮⇒23 —**Property not benefited not subject to assessment.**

A levee district may not constitutionally levy a special tax for the cost of an improvement on property which is not benefited by the improvement, or the benefit to which is merely conjectural, on a basis of equality with property clearly benefited.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit in equity by the Board of Directors of Miller Levee District No. 2 against the Prairie Pipe Line Company. Decree for defendant, and complainant appeals. Affirmed.

Henry Moore, Jr., of Texarkana, Ark., for appellant.

David C. Arnold, of Texarkana, Ark., and H. C. Black, of Independence, Kan. (W. H. Arnold and W. H. Arnold, Jr., both of Texarkana, Ark., and T. J. Flannelly and Paul B. Mason, both of Independence, Kan., on the brief), for appellee.

Before LEWIS, Circuit Judge, and BOOTH and JOHNSON, District Judges.

BOOTH, District Judge. This is a suit by appellant, plaintiff below, brought in the Sixth chancery district of Arkansas, against various defendants to collect unpaid levee taxes. Appellee, one of the defendants, removed its controversy to the federal court, where it was tried. From the decree entered in favor of defendant this appeal was taken.

The material allegations of the bill are that the Miller levee district No. 2 had been created by Act No. 69 of the General Assembly of Arkansas of the year 1911, as amended by Act No. 71 of the year 1913; that plaintiff by virtue of the powers granted to it by said acts, and in accordance with the requirements thereof, had levied a tax of 6 per cent. ad valorem upon the assessed valuation of the real estate within said district for the year 1919; that lying within said levee district, among other lands assessed, were six miles of oil pipe lines belonging to defendant, assessed at $42,690; that the amount of the levee taxes for 1919 against defendant was $2,561.40, which became delinquent April 10, 1920, and, with a penalty of $640.35, making a total of $3,201.75, was still due and unpaid.

The defenses set up by the defendant in its answer, may be summarized as follows: (1) No levy or assessment was ever made against any of the property of the defendant; (2) no property of the defendant located within the confines of Miller levee district No. 2 ever appeared upon the real estate assessment book of Miller county, which was designated by the Legislature as the basis for the alleged levy and assessment; (3) all property of the defendant in the district is personal property, and therefore not subject to assessment for local improvements under the Constitution of Arkansas; (4) the pipe line of the defendant is in no manner benefited by the improvements of plaintiff; (5) the alleged assessment against the pipe line of the defendant is whol-

ly arbitrary, illogical, injurious, discriminatory, and void, being in violation of section 5, article 16, of the Arkansas Constitution, and the Fourteenth Amendment to the Constitution of the United States. The decree of the court below was based on the fourth ground of defense.

We take up the last contention first, namely, that the assessment violated the Fourteenth Amendment. Sections 1 and 4 of the act, as amended, creating the levee district, provide:

"Section 1. That all that part of the territory lying in Miller county, Arkansas, Little river county, Arkansas, and Hempstead county, Arkansas, within the following boundaries, to wit:

"Commencing at the point in Miller county, Arkansas, where the state line between the states of Arkansas and Texas intersects the south bank of Red river at or near Index, in the county of Miller, state of Arkansas; thence down Red river in a general easterly direction until the line of the railway tracks of the St. Louis, Iron Mountain & Southern Railroad is reached at a point opposite Fulton, Arkansas; thence in a southerly direction to a point where the section line between sections seventeen (17) and twenty (20), township sixteen (16) south, range twenty-five (25) west, intersects the west bank of Red river at a point south of Garland, Arkansas, the said line from Index to the intersection of the section line between sections seventeen (17) and twenty (20), township sixteen (16) south, range twenty-five (25) west, to follow the meanderings of Red river; thence west along the section line between sections seventeen (17) and twenty (20) and eighteen (18) and nineteen (19), in township sixteen (16) south, range twenty-five (25) west, sections thirteen (13) and twenty-four (24), fourteen (14) and twenty-three (23), and fifteen (15) and twenty-two (22), township sixteen (16) south, range twenty-six (26) west, to the point where said line strikes the high ground, or 'hills'; thence in a northerly direction following the meanderings of the line at the foot of the 'hills' where the high land and overflow lands, or 'bottoms,' join, to the point where the said line between the high land and overflow land intersects the state line between the states of Arkansas and Texas; thence north along said state line to the point of beginning—be and the same is hereby formed into a levee district to be known as 'Miller levee district No. 2,' the territory added being that part of Little River county and of Hempstead county, Arkansas, lying within and protected from overflow by said levee. * * *

"Sec. 4. That, for the purpose of building, repairing and maintaining the levee aforesaid, and for the purpose of paying such sums as may be necessary for the condemnation of property, and for carrying into effect the objects and purposes of this act, the board of directors of Miller levee district No. 2 shall have power, and it is hereby made their duty, to assess and levy annually a tax upon the valuation as it shall appear each year upon the real estate assessment book for Miller county, Arkansas, Little River county, Arkansas, and Hempstead county, Arkansas, upon all lands and tramroads in said district, and all natural gas or oil pipe lines within said district, and all telegraph lines and all telephone lines within said district, and upon the railroad track of all railroad companies within said district as appraised by the Board of Railway Commissioners under section 6947 of Kirby's Digest, or their successors, and it shall be the duty of the secretary of state to certify to the board of directors of Miller levee district No. 2, the value of such railroad track and telegraph or telephone lines, and natural gas or oil pipe lines, as are located in said district, and the board of directors shall list and assess the same as provided for in section 6945 of Kirby's Digest; but such tax on said lands, natural gas or oil pipe lines, telegraph or telephone lines, tramroads and railroad tracks shall, in no year exceed six per cent. (6%) of the valuation as assessed."

Two matters must be inquired about: (1) The actual valuation adopted as a basis for the assessment; (2) the method by which the valuation was reached.

[1] 1. It is to be noted that the law adopts the "valuation as it shall appear each year upon the real estate assessment book for the county." The valuation in fact used by the board in fixing the tax against defendant was not the valuation of lands owned by the defendant appearing upon the real estate assessment book of the county, although there was on said assessment book a valuation of lands which were owned by the company. These lands, however, did not include right of way for the pipe lines. But the valuation used by the board was that which appeared upon the "personal assessment and personal tax book," and covered, as stated by the Arkansas tax commission—

"value of machinery and equipment, telephone lines and phones, conduits, poles, cables, billets, insulators, and all other material used in construction; pipe lines, cars, barges, boats and barrels; all oil and gas on hand; all gas and oil wells owned or leased; all meters, regulators and services belonging to or operated by the Prairie Pipe Line Company on the first Monday in June, 1919, located in the county of Miller, state of Arkansas, and in the cities and incorporated towns in said county, as fixed by the Arkansas Tax Commission for the year 1919. (Everything is assessed as personal property.)"

The total assessed valuation of defendant's property under this heading was, in Miller county, $575,671, of which $42,692 was allocated to school district No. 32, and this latter amount was adopted by plaintiff as the assessed valuation within the levee district, inasmuch as the pipe line of the defendant within the levee district was, with the exception of a very small portion, within school district No. 32. In the present discussion we shall assume, but without so deciding, that for the purpose of this levee assessment, the pipe line—i. e., the right of way and the pipe—in the levee district was properly considered as real estate, although the pipe line did not appear on the real estate assessment book.

There were 8.42 miles of defendant's pipe line in the levee district, but only about 6 miles of right of way; a portion of the right of way being occupied by a double pipe line. The cost of pipe and laying of the same was approximately $40,000—a portion having been laid in 1909, and the remainder in 1915. The defendant did not own the land upon which the pipe was laid, but owned a right of way for the laying and maintaining of the pipe. If, however, we assume that the defendant owned the strip of land in which the pipe was laid, the amount of the land occupied would be less than 10 acres. This, if valued at $100 per acre, the highest value of adjacent lands, would add $1,000 to the valuation, making $41,000, total original cost, without depreciation. This was all the property whcih the defendant had in the levee district.

The evidence showed that the value of this property, taking into consideration depreciation, was in round numbers $24,000. The evidence also showed that the cost of reproduction new in 1919, less depreciation, was in round numbers, $55,000. The evidence did not disclose any market value of the pipe line. The valuation taken for the assessment of the levee tax was, as stated, about $42,690. This would be 177 per cent. on the lowest valuation, and 77 per cent. on the highest valuation, above given. On the other hand, the evidence showed that improved lands in the levee district were worth from $60 to $100 per

acre; unimproved lands from $25 to $40 per acre. Lands of the former class were taxed for the levee on an assessed valuation of $10 per acre; lands of the latter class on the basis of an assessed valuation of $4.50 per acre. In other words, improved lands were taxed on an assessed valuation of from 10 per cent. to 16 per cent. of their true value, and unimproved lands on about the same basis.

That these results were unfair and injurious to the defendant is, in our judgment, apparent, and that the adoption of such results was "palpably arbitrary and a plain abuse," and violative of the Fourteenth Amendment, is, we think, also clear. Houck v. District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266; Myles Salt Co. v. Com'rs, 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190; Wagner v. Baltimore, 239 U. S. 207, 36 Sup. Ct. 66, 60 L. Ed. 230; Gast Realty Co. v. Schneider Co., 240 U. S. 55, 36 Sup. Ct. 255, 60 L. Ed. 526; Miller & Lux v. District, 256 U. S. 129, 41 Sup. Ct. 404, 65 L. Ed. 859; K. C. So. Ry. Co. v. District, 256 U. S. 658, 41 Sup. Ct. 604, 65 L. Ed. 1151; Thomas v. K. C. So. Ry. Co. (C. C. A.) 277 Fed. 708 (affirmed by Supreme Court decision filed April 9, 1923, 43 Sup. Ct. 440, 67 L. Ed. ——); Mo. Pac. R. R. Co. v. District, 288 Fed. 502, decision by this court filed May 7, 1923.

[2] 2. We turn to the method by which the valuation of defendant's property was reached. By section 9976, Crawford & Moses' Digest of the Statutes of Arkansas 1921, it is provided that a pipe line company shall be assessed for taxation by the Arkansas tax commission. By section 9977 it is made the duty of the pipe line company to make and file with the commission, yearly, a statement showing: Articles of incorporation; amount of capital stock; par value and market value of same; face value and market value of all outstanding bonds secured by mortgages; total number of miles of pipe line owned and operated within and without the state; number of miles of pipe line owned or controlled in the state; number of miles of pipe line owned or operated in the state by such company. Section 9979 provides that the aggregate actual or market value, as the case may be, of all outstanding stocks or bonds, shall be deemed to be the total value of the corporation's property within and without the state, and for the purpose of determining the taxable value in the state of the property—

"in case of any pipe line company the commission shall take the same proportion of the aggregate value of the entire property within and without this state, as determined by this act, of such corporation as the number of miles employed in this state bears to the total number of miles employed in such company. The assessment herein provided for shall include the office fixtures, teams, wagons and other apparatus of such companies."

Section 9980 provides for the apportionment of the assessment in the state between the several counties, towns, and districts, according to mileage.

It is clear from these provisions that the valuation thus fixed includes, not only the pipe line, but also the personal property of the defendant company. This may not be objectionable for the purposes of general taxation, since the personal property is subject to general taxes, the same as the pipe line, which might be considered real estate, and the allocation of such valuation among the various subdivisions of

the state according to mileage therein, while not strictly logical, yet produces results ordinarily not glaringly unjust as between the state and the pipe line company. But when any particular portion of pipe line is to be subjected to a local assessment, and for that purpose is to be considered as real estate, then the unfairness of taking as its value a proportional part of a total valuation figure, which includes personal property, is clearly apparent, in view of the holding that personal property is not subject to local assessments. Snetzer v. Gregg, 129 Ark. 546, 196 S. W. 925, L. R. A. 1917F, 999; Harrington v. Wright, 147 Ark. 181, 227 S. W. 260; Ark. Nat. Gas Co. v. Comm'rs, 142 Ark. 351, 218 S. W. 664.

Our conclusion is that, not only the resulting assessment valuation used by the levee district was unfair and discriminatory, but that the method by which that valuation was reached was arbitrary, and certain to produce, in case of defendant, unfair and discriminatory results—results which amounted to the taking of defendant's property in violation of the Fourteenth Amendment. If the method pursued by the board in fixing the valuation of the property of the pipe line company for the purpose of the assessment here in question was strictly in accordance with the statute, then the statute cannot stand against the complaint here made. In Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. 255, 60 L. Ed. 526, the court said:

"If the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law cannot stand against the complaint of one so taxed in fact. Martin v. District of Columbia, 205 U. S. 135, 139."

To the same effect, Thornton v. Road District, 291 Fed. 518, decision by this court, filed June 7, 1923.

If the method pursued by the board in fixing the valuation was not in accordance with the statute, then it was palpably arbitrary, and a plain abuse and violative of the Fourteenth Amendment.

[3] We are further of the opinion that the evidence sustains the conclusion of the trial court that the improvement provided for under the acts creating the levee district did not benefit the defendant or its pipe line within the limits of the levee district. In our judgment, the evidence clearly shows that the improvement did not increase either the value of the pipe line or its earning capacity. Whether the improvement might possibly in the future decrease the expense of upkeep and repairs was shown by the evidence to depend upon so many conjectural and fortuitous circumstances as to render any such benefit purely speculative.

Appellant calls attention to the decision of the Supreme Court in the case of Valley Farms Co. v. County of Westchester, 261 U. S. 155, 43 Sup. Ct. 261, 67 L. Ed. ——, filed February 18, 1923. But in that case, which involved an assessment to pay for a sewer, it was distinctly held that "all lands within the district ultimately may be connected with some portion of the sewer." Hence the benefit was not purely speculative. In the later case, Thomas v. K. C. So. Ry., supra, the court said:

"But vague speculation as to future increased traffic receipts will not justify a basis of taxation which necessarily produces manifest inequality."

And so, in this case, we say vague speculation as to future decreased operation expense of the pipe line will not justify a basis of taxation which necessarily produces manifest inequality.

The contention .by plaintiff that defendant is estopped to question the validity of the assessment cannot avail, first, because no estoppel is pleaded, as is required under Arkansas practice (Gaines v. Miss. Bank, 12 Ark. 769; Brunswick Co. v. Faulkner, 131 Ark. 594, 199 S. W. 904); and, second, because the record fails to show any evidence of acts or conduct on the part of the defendant upon which plaintiff has relied to its detriment.

In view of the foregoing, it is unnecessary to discuss other questions raised.

The decree of the court below was right, and is affirmed.