**KANSAS CITY SOUTHERN RY. CO. et al. v. OGDEN LEVEE DIST. et al.**

(Circuit Court of Appeals, Eighth Circuit. October 29, 1926.)

No. 6960.

**I. Constitutional law ⊜⟹290(2).**

Levee district assessment against railroad property of over 50 per cent. as against 5 to 15 per cent. of value of other property *held* discriminatory arbitrary, and unjust, in violation of Const. Amend. 14.

**2. Levees and flood control ⊜⟹23.**

Construction of levee *held* of benefit to railroad having track constructed on embankment and trestle over lakes within district.

**3. Taxation ⊜⟹453.**

Taxpayer, who does not exhaust remedy before administrative board, cannot thereafter be heard by a judicial tribunal to assert invalidity of tax.

**4. Levees and flood control ⊜⟹25—State act creating levee district, providing for determination of assessments by board of directors, held not to provide administrative remedy as necessary prerequisite to judicial challenge of assessment (Laws Ark. 1909, p. 103, §§ 4, 18, as amended by Laws 1917, p. 1853).**

Act Ark. March 2, 1909 (Laws 1909, p. 103) §§ 4, 18, as amended by Laws 1917, p. 1853, creating levee district, does, not, by providing for the determination of disputed assessments by board of directors without requiring public hearing, provide administrative remedy, to be exhausted before assessment can be judicially challenged.

**5. Levees and flood control ⊜⟹25.**

"Administrative remedy" is one not judicial, but one provided by commission or board created by legislative power.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remedy.]

**6. Levees and flood control ⊜⟹25.**

Crawford & Moses' Dig. Ark. § 9790, authorizing state tax commission to raise and lower values to make assessments uniform, does not apply to special taxation under Act Ark. March 2, 1909 (Laws 1909, p. 103), as amended by Laws 1917, p. 1853, creating levee district.

**7. Levees and flood control ⊜⟹25.**

Railroad, having paid taxes assessed for levee district for 14 years, *held* not estopped to dispute yearly assessment, notwithstanding issuance of bonds by district.

**8. Levees and flood control ⊜⟹25.**

Railroad would not be estopped from contesting levee district assessment by reason of representation at meeting and voting thereat for district directors.

**9. Levees and flood control ⊜⟹25.**

Railroad *held* not estopped to dispute assessment of levee district because of participation of its engineers in construction work at time of break in levee.

**10. Courts ⊜⟹328(1).**

Penalties arising from alleged invalid tax may be construed as part of amount involved in determining jurisdiction of federal court.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Kansas City Southern Railway Company and another against the Og-

den Levee District and its directors. Bill dismissed and plaintiffs appeal. Reversed and remanded.

A. F. Smith, of Waldron, Ark. (James B. McDonough, of Ft. Smith, Ark., Frank H. Moore, of Kansas, Mo., and S. W. Moore, of New York City, on the brief), for appellants.

Paul Jones, of Texarkana, Ark. (Seth C. Reynolds, of Ashdown, Ark., and Paul Jones, Jr., of Texarkana, Ark., on the brief), for appellees.

Before SANBORN, STONE, and KENYON, Circuit Judges.

KENYON, Circuit Judge. The Legislature of Arkansas, by special act approved March 2, 1909 (Acts Ark. 1909, p. 103), created, for the purpose of the erection and maintenance of a levee along a portion of the Red river in Little River county, Ark., the Ogden levee district. The act was amended in 1917 (Acts Ark. 1917, p. 1853) in a manner hereinafter explained. Appellants (hereafter designated as such and as the railway) are the Kansas City Southern Railway Company and the Texarkana & Ft. Smith Railway Company. These railway companies operate a line of railroad from Kansas City to the Gulf of Mexico. Part of the right of way is in this levee district. Appellees are the Ogden levee district and its directors, who were selected in the method provided by the act.

This proceeding was instituted by appellants to restrain the enforcement of a special tax levied upon their property in the district in 1923 in the sum of $2,443.50, to which penalties had attached, making the amount involved over $3,000. Evidence was introduced and a trial had in the District Court for the Western District of Arkansas, which court dismissed the bill, holding that plaintiffs (appellants here) could not maintain the suit, for the reason that they had not availed themselves prior to bringing the same of the administrative remedies which the statutes of Arkansas and the act as amended provided, and that lapse of time precluded an attack upon the entire scheme of assessment.

[1] I. The first inquiry naturally arising is whether the assessment of benefits against appellants was so excessive, arbitrary, and discriminatory as to violate section 1 of the Fourteenth Amendment to the Constitution, as, if this inquiry is resolved in favor of appellees, the case is ended. There is some discrepancy in the evidence as to the exact area of the levee district. We accept the figure, in our discussion of the issues involved, of 2,-716.54 acres (exclusive of the right of way) as approximately correct; the railway right of way consisting of 24.41 acres, the trackage being 1.81 miles. The levee was constructed in 1909. Prior thereto the land was subject to overflow every year. Many hundreds of acres of land have been redeemed by the construction of the levee. By a change in the channel of the Red river there was created in the territory comprising the district three small lakes. The railway crosses two of them, and one, in the shape of a horseshoe, it crosses twice. Through the district the railway is constructed on an embankment, except across the lakes, where it is upon trestles. In 1915 and in 1923 there were breaks in the levee which permitted the water to come against the embankment of the railway, and the evidence of the district shows there had been some slides in the embankment at that time. The evidence also shows that in 1908, prior to the construction of the levee, when there was a severe flood, drift was washed against appellants' trestles, and that there had been no substantial amount of drift against the trestles since the levee was built. The trestles of the appellants were still maintained, notwithstanding the levee. During the 14 years following the creation of the district appellants have paid $27,412.83 in levee taxes. $25,000 of bonds have been issued by the district.

It was the contention of appellees in the trial court that the levee was of benefit to the railway both directly and indirectly—directly by protecting its embankments and trestles, and indirectly by reason of increased traffic due to the development of the farm lands in the district. The evidence shows that part of the production of these reclaimed lands was carried by truck to the town of Ashdown, where there are two other railways competing with appellants. The railway company introduced evidence to show that from 1911 to the time of trial the traffic out of Ogden (another town in the district) had decreased, instead of increased. The act of 1909 authorized the board of directors, for the purpose of constructing and maintaining the levee, to levy a tax not exceeding 4 per cent. per annum upon the property in the district (other than personal property) as assessed for purposes of general taxation.

The assessed value of appellants' property in the district was $48,870. The assessed value of the land in the district (outside of the railway's right of way), paying levee taxes to the district, was $21,165. The land seemed to have been assessed, regardless of

improvements or of differences in the value of the lands, at a flat rate of $10 an acre, these assessments running from 5 to 15 per cent. of their value, while the railway property included in the right of way and the improvements thereon were assessed at approximately 56 per cent. of their value. The bases of the railway property assessments seem also to have included intangible values. The process of assessment as to the lands without the right of way and as to said railway right of way and property thereon was entirely different.

The law applicable to the creation of taxing districts and the assessment of property therein to pay for special improvements, such as drainage, roads, levees, etc., is well settled. Time and again the Supreme Court of the United States has laid down the rules of law which pertain to the situation shown to exist in this case. This court likewise has had many cases before it where the same questions were involved. We quote from a number of these cases, viz.:

Thomas v. Kansas City Southern Ry., 261 U. S. 481, 483, 43 S. Ct. 440, 441 (67 L. Ed. 758): "The Legislature of a state may, if consistent with its Constitution, establish a drainage district, may set the boundaries, and may apportion the burden by fixing the basis of assessment and of taxation. The Legislature's determination that lands will be benefited by a public improvement for which it authorizes a special tax is ordinarily conclusive. Its action in so doing cannot be assailed under the Fourteenth Amendment, unless it is palpably arbitrary or discriminatory."

In Milheim et al. v. Moffat Tunnel Improvement District et al., 262 U. S. 710, 721, 43 S. Ct. 694, 698 (67 L. Ed. 1194) the Supreme Court, referring to the question of classification, said: "It is well settled, however, that if a proposed improvement is one which the state has authority to make and pay for by assessments on property benefited the Legislature in the exercise of the taxing power has authority to determine, by the statute imposing the tax, what lands may be and are in fact benefited by the improvement, and, if it does so, its determination is conclusive upon the owners and the courts, and cannot be assailed under the Fourteenth Amendment, unless it is wholly unwarranted and a flagrant abuse, and by reason of its arbitrary character is mere confiscation of the particular property."

Kansas City Southern Railway Co. et al. v. Road Improvement District No. 6 of Little River County, Arkansas, 256 U. S. 658, 661,

41 S. Ct. 604, 605 (65 L. Ed. 1151): "Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case."

Thomas, Sheriff, etc., et al. v. Kansas City Southern Ry. Co. et al. (this Circuit) 277 F. 708, 712: "Therefore the test of law to be applied to the facts of this case is whether or not the facts show this assessment to be palpably arbitrary and discriminatory."

In Thornton et al. v. Road Imp. Dist. No. 1 of Clark County, Ark., et al., 291 F. 518, 530, 531, this court said: "Although the law or ordinance, pursuant to which an assessment of benefits and taxation thereunder are made authorizes or permits a fair and just assessment of benefits and levy of taxes, nevertheless, if the officers executing and applying that law make an assessment of benefits and a taxation thereon, that is oppressively excessive, arbitrary or confiscatory, or grossly disproportionate, or palpably discriminatory between the parties and property benefited thereby, that assessment and taxation cannot stand against one so assessed or taxed to his injury."

This court, in Board of Directors of Miller Levee Dist. No. 2 v. Prairie Pipe Line Co., 292 F. 474, 479, had under consideration the assessment against the Miller Pipe Line Company made by the Miller levee district which had been created by the Legislature of Arkansas, and in which the facts bear analogy to those in this case. The court held that the results of the assessments were unfair and that the method adopted was "palpably arbitrary and a plain abuse," and violated the Fourteenth Amendment to the federal Constitution, and said: "If the method pursued by the board in fixing the valuation of the property of the pipe line company for the purpose of the assessment here in question was strictly in accordance with the statute, then the statute cannot stand against the complaint here made." See, also, among the numerous cases on the subject, Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266; Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523; Miller & Lux, Inc., v. Sacramento & San Joaquin Drainage District, 256 U. S. 129, 41 S. Ct. 404, 65 L. Ed. 859; Road Improvement Dist. No. 2 of Conway Co. et al. v. Missouri Pac. R. Co. (C. C. A.) 275 F. 600; Missouri Pac. R. Co. v. Road Improvement Dist., etc. (C. C. A.) 288 F. 502; Kansas City Southern Ry. Co. et al. v. May et al. (C. C. A.) 2 F.(2d) 680.

Subjecting this case to the test of these decisions, do the facts show the assessment of

benefits against appellants to be so palpably arbitrary and discriminatory as to be violative of the Fourteenth Amendment to the federal Constitution? We pass as unnecessary for our determination the question as to whether the method of assessment here, as claimed by appellants, violates the Constitution of the state of Arkansas.

The farm land in this district was assessed at the rate of $10 per acre, regardless of benefits and apparently without considering the value of improvements thereon, while an entirely different method was employed as to the appellants' properties. The assessment of benefits to the appellants, as said in Thornton et al. v. Road Imp. Dist. No. 1 of Clark County, Ark., et al., supra, "should be just and fairly proportionate to the assessment of benefits to other property benefited by that improvement." This court has pointed out in Thomas, etc., v. Kansas City Southern Ry. Co. et al., supra, that there is no connection between general taxation and assessments for special benefits. We know of no authority upholding the right of assessors or assessing boards in case of special assessments for benefits to arbitrarily use different and inconsistent bases for their assessments in the same taxing districts. Of course, there may be proper classification of property for taxation, but that classification must be reasonable, and not merely arbitrary, with no regard to real differences in the property, and, as said in Royster Guano Co. v. Virginia, 253 U. S. 412, 415, 40 S. Ct. 560, 561 (64 L. Ed. 989), "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

Here the property of appellants was assessed at over 50 per cent. of its value, including improvements, and we think also including some intangible values, while the farm lands were assessed at from 5 to 15 per cent. of their value excluding improvements. It would be difficult to imagine a more palpable discrimination than this. Further, as we have pointed out, the amount of $10 per acre was assessed against farm lands without any regard to improvements or benefits, while as to the appellants the assessment purported to be made according to assessed values. This court has heretofore declared that assessed valuation for general taxation bears no relationship to the proper basis for special assessment of benefits. Missouri Pac. R. Co. v. Road Improvement Dist., etc. (C. C. A.) 288 F. 502; Thomas v. Kansas City Southern Ry. Co. (C. C. A.) 277 F. 708.

Appellants own 24.41 acres in the levee district. The tax against appellants was $2,443.50 for the year in question, or approximately 59.31 per cent. of the district taxes. The 2,716.54 acres, exclusive of the right of way was taxed $1,326.75, or 32.19 per cent. of the district taxes. The tax imposes upon the railways a large percentage of the cost of an improvement which is of little benefit to them, while the lands without the right of way are burdened with a small part of the cost, though receiving great benefits. It is somewhat difficult to determine from this record just what method, if any, was employed by the board of directors in making this special assessment, but whatever the method may have been, the result shows that the assessment as to appellants is so "palpably discriminatory," "palpably arbitrary," palpably excessive, and palpably unjust, resulting in such manifest inequality of taxation, that it cannot meet the test established by the courts, and is clearly violative of the Fourteenth Amendment to the federal Constitution.

Undoubtedly there was some benefit to appellants' right of way from the construction of the levee. Keeping the water from a railway embankment is, of course, beneficial to the railway. Before the levee was constructed, the evidence shows that in 1908 some driftwood came against appellants' trestle. The water at that time reached a level of 32½ feet, and a levee of the height of this one would have been little protection under these circumstances. Of course, the benefit to the lands is vastly greater in proportion, as the levee permits hundreds of acres to be cultivated. There may have been some benefit to appellants from an increase of traffic resulting from crops grown upon the reclaimed land, although the evidence shows that considerable of the produce raised in the district was hauled by truck to Ashdown, the county seat of Little River county, where there were two railroads in competition with appellants, and the records introduced by appellants show that railroad traffic at Ogden, a town in the levee district, had decreased since 1911. The question of increase of passenger or freight traffic, especially in these days of automobiles and auto trucks, is a speculative and doubtful one.

In the case of Thomas v. Kansas City Southern Ry. Co., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758, the court considered the indirect benefit to the railroad from the establishment of a drainage district, and said, "The railroad would derive some measure of indirect benefit," and that "vague speculation as to future increased traffic receipts will not

justify a basis of taxation which necessarily produces manifest inequality." It is interesting to note, also, in that case, in which appellants were parties, the court held there was no direct benefit to the railway from the construction of the ditches and embankment designed to drain and to protect the district from overflow, "because the tracks are laid upon a fill or dump (with the exception of one trestle) and are above flood level."

[2] Here the trial court found there was benefit to the property of appellants by the construction of the levee. With that we are inclined to agree, but there was no such benefit as to justify the discriminatory and excessive assessments made against their property.

[3] II. The trial court did not pass on the question of the validity of the tax complained of, but held that appellants could not question the rule of taxation fixed by the special statute because for many years they had paid the district taxes; that they were barred from questioning the method of the assessment because they had not exhausted the administrative remedies provided by the laws of the state, especially the statute in question. Other grounds of estoppel are urged, which we shall later consider.

We regard the question raised as to the right of appellants to question the assessment and the tax for the year 1923, because of the alleged failure to exhaust administrative remedies, the most serious question in this case. It is settled law, as stated in the latest enunciation of the Supreme Court on that subject (Gorham Mfg. Co. v. Tax Commission, 266 U. S. 265, 269, 270, 45 S. Ct. 80, 81, 69 L. Ed. 279), that "a taxpayer who does not exhaust the remedy provided before an administrative board to secure the correct assessment of a tax cannot thereafter be heard by a judicial tribunal to assert its invalidity" (First National Bank of Greeley v. Board of County Commissioners of the County of Weld, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; Milheim et al. v. Moffat Tunnel Improvement District et al., 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194; Farncomb et al. v. City and County of Denver et al., 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424).

In Gorham Mfg. Co. v. Tax Commission, supra, which was a case arising under the laws of the state of New York involving the payment of a franchise tax to be computed by the state tax commission, the act under consideration provided that, if taxes had been assessed which could not have been lawfully demanded, the commission, upon application therefor, was required to grant a hearing and receive evidence, and was given power to set-

tle the matter "according to law and the facts." It was held that the act provided an administrative remedy, and, having made no application to the commission for revision of the tax and submitted no evidence, the complaining party was not entitled to maintain a bill in equity for the purpose of enjoining its collection.

In First Nat. Bank of Greeley v. Board of Co. Commissioners of the County of Weld, supra, the Supreme Court followed the decision of the state Supreme Court of Colorado that the method and procedure provided by the state statutes was an administrative remedy. The state Supreme Court having so decided, the Supreme Court of the United States under well-known rules of law followed the construction of the state statute by the highest court of the state. In Farncomb et al. v. City and County of Denver et al., supra, the case was decided by the Supreme Court of the United States on the same theory, namely, that the highest court of the state had construed the law with reference to hearings in the matter of assessing taxes before the board of supervisors duly constituted to hear complaints, and had held that this was a remedy, and that plaintiffs could not complain, because they had not availed themselves of the remedy provided.

It may be noted in connection with Milheim v. Moffat Tunnel Dist., supra, that the act for the construction of the Moffat tunnel created a district and a commission to construct the tunnel. That commission was authorized to levy special assessments upon the property in the district. The commission was required to appoint a time and place to hear objections to the assessments, and was required to give notice by publication. The aggrieved property owner had the right to appear, file objections and introduce evidence. A hearing was provided and the commission had power to modify or amend the assessment that had been made. An appeal therefrom was provided to the district court of the county. In all of these leading cases, where judicial relief has been denied in tax assessment cases because of the party's failure to exhaust the remedies under state statutes, such remedies have provided for a hearing and the introduction of evidence and some kind of public notice.

[4] We turn to the act in question and the amendatory act thereto, to ascertain if any administrative remedy for erroneous taxation is provided. The original act passed by the Legislature of Arkansas, approved March 2, 1909, has no provision whatever for any adjustment or equalization of unjust or unequal

taxes. Evidently the amendment to sections 4 and 18 of the original act, which amendatory act was approved March 24, 1917, was an attempt to remedy this defect. In this act is the following provision:

"Provided, also, the board of directors shall have power when they are of the opinion that the real estate or any part of it in said district is unequally or unjustly assessed, to equalize the assessment thereof by lowering or raising the assessment as in their opinion is just, and the assessment and equalization so made shall take procedure over that of the tax assessor or of the county equalization board, in so far as it applies to the tax, or raising of revenues for said district. In all other matters the assessment of the tax assessor as equalized by the equalization board shall prevail."

This is the part of the act claimed to provide a complete remedy for an aggrieved taxpayer. We do not find that the Supreme Court of Arkansas has held this provision to be an administrative remedy. Hence this court approaches the question without any assistance from any decision of the Supreme Court of Arkansas as to the construction of this act, and with nothing to bind it in its construction thereof by virtue of the action of the highest legal authority of the state.

Does this provision, heretofore quoted, of the amendatory act provide an administrative remedy that must be sought as a prerequisite to a judicial challenge of the assessment and the resultant tax complained of? Bouvier's Law Dictionary defines a remedy as "the means employed to enforce a right, or redress an injury." This definition is apparently approved by the Supreme Court of the United States in Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 20 S. Ct. 824, 44 L. Ed. 921.

In U. S. v. Lyman, 26 Fed. Cas. page 1024, No. 15,647, Circuit Justice Story defines remedy as follows: "A remedy, as understood in legal phraseology, is a mode prescribed by law to enforce a duty or redress a wrong." In Thomas v. Western Union Tel. Co., 25 Tex. Civ. App. 398, 400, 61 S. W. 501, 502, the court discusses the word "remedy" as relating to the law of the forum, and says that it means "such matters as the character and form of action, * * * procedure, the mode of redress."

Remedy relates to the mode or manner provided to enforce a right or duty, or to redress a wrong. 34 Cyc. 1201. Thus we speak of mandamus as an appropriate remedy, Haugen v. Albina Light & Water Co., 21 Or. 411, 28 P. 244, 14 L. R. A. 424; likewise the remedy of quo warranto, State ex rel. Hahn v. St. Paul & S. C. Ry. Co., 35 Minn. 222, 28 N. W. 245; also the remedy by certiorari or by appeal.

[5] An administrative remedy is one not judicial, but one provided by a commission or board created by the legislative power. This amendatory statute does not provide for any hearing on the question of erroneous or unjust assessment. No opportunity is given to the taxpayer to file objections seeking to correct the assessment; no procedure is provided, involving the introduction of evidence or notice of proceedings to those interested. There is no requirement that the board of directors shall make any new assessments founded on benefits, or take that into consideration in reducing or increasing assessments. It confers power upon the directors to exercise their own opinion in readjusting and equalizing the assessments made under the act. Their action need not be public. Their conclusion may be arrived at without any evidence or notice, or any opportunity to be heard by the aggrieved parties. Any action as to readjustment of assessments is subject to the whim or caprice of the board of directors.

The courts have frequently had before them questions involving the sufficiency of proceedings leading up to the assessment of general and special taxes. Through them all it is apparent that the courts consider that, where special assessments of benefits are made by boards or commissions under legislative authority as a basis for taxation to pay for special improvements, the taxpayer must have a right at some stage of the proceedings to a hearing, and that such hearing is not a mere matter of favor or grace with those entrusted with the assessment. In Londoner v. Denver, 210 U. S. 373, 385, 386, 28 S. Ct. 708, 714 (52 L. Ed. 1103), the Supreme Court said: "But where the Legislature of a state, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing. * * * Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to

support his allegations by argument however brief, and, if need be, by proof, however informal." Hagar v. Reclamation Dist. No. 108, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569; Security Trust & Safety Vault Co. v. City of Lexington, 203 U. S. 323, 27 S. Ct. 87, 51 L. Ed. 204; Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 28 S. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463.

If a hearing by a board or commission authorized by legislative action to assess special taxes is essential to a valid exercise of the taxing power conferred on such board or commission, then a statute not providing for such hearing does not provide an adequate administrative remedy to the purported taxpayer. How, then, can a statute providing for readjustment of unequal and unjust assessments be a sufficient administrative remedy, where no hearing is provided, no opportunity given to introduce proof, or present argument, and where the whole matter rests for determination merely in the private opinion of a board of directors of a district, and any relief is subject to their mere whim or grace. They may act without notice, without evidence, without public hearing, and with no opportunity for the aggrieved taxpayers to appear. Of course, they could permit these things, and perhaps would; but the statute places upon them no compulsion so to do. Certainly this provision affords no sufficient administrative remedy to prevent a party illegally taxed from an appeal to the courts.

The question is raised by appellants as to whether the amendatory act covers railroad property at all. The proviso does not refer to railroad property, but it does refer to real estate in the district. The terms both of the original and the amendatory act seem to distinguish real estate and railroad property. There is no reference to reassessment of railroad property, which the act designates as railroad track, and the assessment of which is made by the Railroad Commission of the state. Other language in the amendatory act would give some weight to the argument that railroad property was not covered thereby. Section 9989 of the statutes of Arkansas provides that buildings and side tracks of railroads and the main track shall be assessed as real estate, and possibly that might save this question to appellees. However, we find no need for determining it, as we are satisfied the amendatory act does not provide a complete administrative remedy to correct erroneous and unjust assessments.

[6] It is also urged that appellants did not seek revision of the assessments made before the state and county assessing authorities.

Section 9790 of the Arkansas Statutes provides that the state tax commission shall have the power to raise or lower the values in any county, or the values of any individual taxpayer in any county so as to make the assessments uniform throughout the state. This provision seems to relate to general taxation, and not to special taxation based upon special benefits by reason of internal improvement. We do not think the same applicable to the situation here, and under the doctrine of the Supreme Court of the United States in Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979, application to the state tax commission was neither practicable nor necessary.

[7] III. Estoppel is claimed because of the fact that appellants have recognized the district and have paid the levee taxes for approximately 14 years, and during said time bonds have been issued by the district to cover the cost of the levee and improvements subsequently made. The trial court held that appellants could not question the rule of taxation fixed by the state statute, because they had paid these taxes for so many years. It must be borne in mind that taxes were assessed each year, and each year's tax was based on that year's assessment, which constituted a new transaction. Each year there was a new right to complain of the new assessment and the new tax. Bonds had been issued originally in the sum of $20,000, and later in the sum of $5,000, to cover the repairing of some breaks and some damage to the levee occurring in the years 1915 and 1916. Appellants had nothing to do with the issuance or with the sale of bonds. The purchasers of the bonds presumably knew that there would be a new assessment each year. Appellants have paid unjust taxes assessed against them for some 14 years, and the taxes paid amount to more than the face of the bonds. None of these bonds, however, appear to have been liquidated. There is ample property in the district to pay the bonds, even if the assessments of benefits are fairly and properly apportioned. By the payment of these taxes during these years, certainly no right has arisen in favor of the bondholders to demand that appellants shall continue to pay a disproportionate share of the taxes. It is immaterial to the bondholders as to the proportion of such taxes which the railway company and the landowners shall bear. They have no interest in such question. Kansas City Southern Ry. Co. et al. v. May et al. (C. C. A.) 2 F.(2d) 680.

In Board of Directors of Miller Levee

Dist. No. 2 v. Prairie Pipe Line Co., 292 F. 474, 480, this court said: "The contention by plaintiff that defendant is estopped to question the validity of the assessment cannot avail; * * * and, second, because the record fails to show any evidence of acts or conduct on the part of the defendant upon which plaintiff has relied to its detriment." We are unable to see any prejudice to appellees, or to the bondholders who are not parties here, in the action of appellants, who, having paid unjust taxes for 14 years, now object to a continuance of such payments.

[8] It is further asserted by appellees that appellants are estopped from questioning the assessment and tax by certain affirmative acts, viz. that at a meeting in June, 1911, one A. F. Rust, who was consulting engineer of the Kansas City Southern Railway Company, was present and cast the nine votes to which the railway company was entitled under the act for two directors who were elected at that meeting; secondly, that appellants advised and superintended the building of the loop around the cave-in of the levee which occurred during the high water of 1923. We think both contentions are without merit. It is something of a disputed question in the record whether Mr. Rust had any authority whatever to represent the Kansas City Southern Railway Company. The testimony shows that some of the files of Mr. Rust, who had died before the trial of the case, failed to disclose any authority for him to attend the meeting of the drainage district, or to cast any votes for the Kansas City Southern Railway Company; but, even if he had authority to represent the Railway Company, how could appellees be prejudiced by the fact that appellants voted at an election for two of the directors of the district? Would that estop them from contesting any action whatever of the district thereafter, no matter how unreasonable or illegal? We see no relationship between this action and any doctrine of estoppel.

[9] As to the second question, the evidence shows that the engineers of the railway company were doing certain work near the place where the break occurred in the levee, and offered their services to the district without compensation, and the services were accepted and certain work done by them. We fail to see how there could be any estoppel arising out of such action.

[10] Some suggestion is made in the brief of appellees that the amount involved was not sufficient to give jurisdiction to the federal court. The suit was to restrain the enforcement of a tax of $2,443.50 and penalties for the year 1923, and to enjoin the levy and exaction of similar taxes and penalties in the future. Appellees filed a counterclaim for enforcement of the tax and penalties. As the penalties apparently were $610.87, the amount involved was slightly more than $3,000. We see no reason why the penalties sought to be recovered are not to be construed as part of the amount involved. As to appellants, we conclude the tax assessed for the year 1923 was illegal, and that the trial court should have entered a decree annulling it; as to assessments subsequent to that year we entertain no doubt that, in view of this holding, a readjustment and equalization thereof can be made. We pass only on the 1923 tax. The case is reversed, and remanded to the District Court for a decree in harmony with the views herein expressed.

Reversed and remanded.